Thomas F. Buckner, Respondent, v. Quick Seal, Inc., and Liberty Mutual Insurance Company, Appellant.—118 S. W. (2d) 100.

Kansas City Court of Appeals. May 23, 1938.

*Mosman, Rogers, Bell & Buzard* and *Don E. Black* for appellants.

*Cope & Hadsell, A. M. Etchen* and *Hume & Raymond* for respondent.

REYNOLDS, J.—This is an appeal from the judgment of the Circuit Court of Jackson County, Missouri, at Kansas City, affirming the final award of the Missouri Workmen's Compensation Commission in favor of the respondent-employee (hereinafter referred to as the employee) against the appellant-employer (hereinafter referred to as the employer) and its insurer.

On October 30, 1936, the employee, Thomas F. Buckner, filed a claim for compensation for alleged injuries accidentally received by him, growing out of and in the course of his employment with the employer.

Thereafter, in due time, the employer, Quick Seal, Inc., and its insurer, Liberty Mutual Insurance Company, filed their answer to said claim and later, on November 17, 1936, filed their amended answer to said claim.

A hearing had on March 10, 1937, before Referee Warner Woolverton of the commission, at Kansas City, Missouri, resulted in an award rendered on March 26, 1937, by said referee of compensation to the employee for permanent partial disability for one hundred and eight weeks at the rate of twenty dollars per week.

An appeal was had by said employer and its said insurer from the award of the referee to the entire commission on April 1, 1937, resulting in the affirmance of the referee's award by the entire commission on June 24, 1937.

Thereafter, an appeal from the final award was taken by the employer and its insurer to the Circuit Court of Jackson County, Missouri, at Kansas City, on July 8, 1937; and, on July 10, 1937, the commission caused to be duly certified to said court and filed therewith a transcript of the evidence and the awards and findings of said commission in said cause, together with all documents and papers on file with it therein.

Thereafter, on September 13, 1937, at the September term, 1937, of the Circuit Court of Jackson County, Missouri, at Kansas City (to which the appeal was had), the cause was heard before the judge of division 2 of said court upon the record certified to said court by the commission; and judgment was entered affirming the final award of the commission and ordering that the employee have of and recover from the employer and its insurer the sum of twenty dollars per week for one hundred and eight weeks, beginning June 1, 1936, for permanent partial disability, payable in the manner prescribed, as fixed in the final award of the Compensation Commission, and that execution issue therefor.

It appears from the record that the employee was, on the date of his alleged injuries and for some time prior thereto, employed by the

employer to repair and install refrigeration machinery, which work took him to different points all over the United States. In doing this work, he traveled from place to place by railroad train and, at the time of his alleged injuries, was traveling as a passenger on a train in the course of his employment to do some work for the employer at Jacksonville, Florida.

It was alleged by the employee in his claim filed with the Workmen's Compensation Commission that he had sustained personal injuries on June 1, 1936, near Pensacola, Florida, while en route as a passenger on a train from New Orleans to Jacksonville, Florida, on business of the employer; that he had completed a job for the employer of mechanical refrigeration at Baton Rouge, Louisiana, and was going to Jacksonville, Florida, to finish another job at that point, traveling on the employer's time; that he was assaulted without provocation while so en route on the train by a drunken individual thereon, who struck him over the face and the right eye, from which the loss of the sight of the right eye resulted. The claim was dated October 29, 1936, and was filed with the commission October 30, 1936.

The employer and its insurer filed answer to the employee's claim November 7, 1936, said answer being dated November 6, 1936, by which they admitted the date of the accident as being June 1, 1936, and the place where it happened as being near the city of Pensacola, State of Florida, while the employee was en route from New Orleans to Jacksonville, Florida, and by which they denied each and every other allegation, matter, and averment in said claim.

Subsequent to filing said original answer, the employer and the insurer filed an amended answer before the commission on November 17, 1936, which was dated November 16, 1936, in which the date and the place of the accident were again admitted and denial was again made of each and every allegation, matter, and averment made and contained in the employee's claim. In such amended answer, the employer and the insurer further set up that the first notice given to them or either of them of the alleged accident and injury was on or about August 10, 1936, and that they had been prejudiced by the failure of the employee to report said accident as required by law and pleaded such failure to give notice as a bar to the prosecution by the employee of the claim.

It was admitted by the parties at the hearing before the referee that both the employee and the employer had elected to accept the provisions of the Missouri Workmen's Compensation Commission Act before the time of the accident and that the compensable rate was twenty dollars per week. It was admitted that, at the time of the accident, the employee was traveling on a train in the course of his employment. The employer and the insurer upon said hearing denied that, if the employee had sustained any injury, such injury re-

sulted in the loss of the vision of his right eye and that the injury or the loss of the vision of his right eye was the result of an accident arising out of and in the course of his employment.

The employee testified that, on June 1, 1936, the date of his injury, he was in the employ of the employer as a refrigeration mechanic; that he had completed a job for the employer at Baton Rouge, Louisiana, and was en route by train to Jacksonville, Florida, for the purpose of installing some machinery at the plant of the Seybold Baking Company at that point, which had been previously sold and delivered to said bakery by the employer; that, while on the train en route, he became acquainted with one Frank J. Tart, another passenger on said train; that he and his acquaintance started from the car in which they were seated to go to the smoker, located toward one corner of the coach; that, when they reached the smoker, it was so crowded that they could not get a seat and they stood in the vestibule of the smoking car or the aisleway adjacent to the smoker; that, while standing there, a stranger approached, who was very drunk, stating that he weighed 297 pounds and was a wrestler. He stated to the employee and his acquaintance that he was a wrestler and was going to demonstrate some wrestling holds. He at once attempted to take hold of the employee and seized him; and, as the employee was attempting to escape and break the wrestler's hold upon him, the wrestler demonstrated upon him with—in ringside parlance—the "rabbit punch," landing on the employee's head over the right eye and causing his injury. The employee testified that the wrestler shook him and twisted his head; that he took hold of his neck and further demonstrated his wrestling tactics by applying his wrists to the sides of his neck and shaking him about; that he complained of his treatment and tried to get away from the wrestler but found that he was hedged in between the walls of the narrow aisleway in which he was standing and could not retreat and get away from him. He could not get into the smoking room because it was filled; and he was cut off from the coach in which he had been riding by the ponderous form of the wrestler who, with his 297 pounds, stood in the narrow aisleway in front of him.

It does not appear that the employee had ever seen this wrestler before. Neither does it appear that the wrestler had any malice against him or that his attack upon him was due to any personal differences between them or to any provocation given by the employee. Upon the other hand, such attack appears to have been due entirely to a desire on the wrestler's part to demonstrate his wrestling tactics upon the employee, against the wishes of the employee and his fellow passenger Tart. The only conversation had during the time that the wrestler was about the employee related solely to wrestling and wrestling holds. There was nothing said concerning the employer's business or concerning any matters relating thereto.

The employee's face about the right eye became blue and black and was very sore and painful for some days thereafter. He could not sleep that night. When he got off the train the next morning at Jacksonville, his eye was very much blurred; and he could not see very well with it. Such blurred condition has continued ever since. There is evidence tending to show that the employee sustained the loss of vision to his right eye by reason of the blow received from the wrestler over it by him. There was expert testimony to the effect that the loss of vision sustained by him could have been caused by a blow such as that received from the wrestler.

There is evidence tending to show that his left eye was perfectly normal and that the vision in his right eye had been normal up to the time of his injury on June 1, 1936.

The employee returned from Jacksonville to Kansas City on the morning of June 27, 1936, at an early hour and went immediately to the employer's place of business where he remained for about one hour and then left, upon the urgent request of the employer that he do so, for Topeka, Kansas, on business for the employer. He did not return to Kansas City again until July 29, 1936. He testified that, when he was in Kansas City on June 27, 1936, he told the employer that he had a little trouble with his right eye but that the employer was very busy and had gathered up some parts from the foundry for the Topeka job and represented to him that it was important for him to go ahead and he went on; that, at that time, there was just a little red streak or bloodshot showing in his eye as one of the effects of the blow received by him from the wrestler; that the blur in his eye, following immediately upon the accident, had not cleared up and he was still troubled by it; that, from June 27 to July 29, he was out on the road, working for the employer; and that, when he returned to Kansas City on July 29, he had some discussion with the employer about his eye and was advised by the employer to see a doctor immediately, which he did, and, for the first time, he learned the nature of the injuries to his eye, and their permanent character.

There is no evidence appearing by the employer or the insurer at the hearing. They made no effort to show how or in what way prejudice resulted to them by reason of the failure of the employee to give them written notice of his injuries within the statutory period. The employee testified as to the nature of his employment and his duties and testified that he was required to go from place to place by train to fulfill his employment and to do the work assigned him by the employer at different places through the country.

## OPINION.

1. The first point made by the defendants is as follows:

"That there was not sufficient competent evidence in the record to

warrant the making of the award, in that there was not sufficient competent evidence in the record to warrant the findings—upon which the award was based—

"(1) That the employee's claim for compensation was not barred by reason of his failure to report said alleged injury to his employer in accordance with the requirements of Section 3336 of the Revised Statutes of Missouri, 1929."

Section 3336, Revised Statutes of Missouri, is as follows:

"No proceedings for compensation under this chapter shall be maintained unless written notice of the time, place and nature of the injury, and the name and address of the person injured, shall have been given to the employer as soon as practicable after the happening thereof but not later than thirty days after the accident, unless the commission shall find that there was good cause for failure to give such notice, or that the employer was not prejudiced by failure to receive such notice. No defect or inaccuracy in such notice shall invalidate the same unless the commission shall find that the employer was in fact misled and prejudiced thereby."

The award of the commission is as follows:

"The above parties having submitted their disagreement or claim for compensation for the above accident to the undersigned Members of the Missouri Workmen's Compensation Commission, and after hearing the parties at issue, their representatives, witnesses and evidence, the undersigned find and award compensation for said accident in favor of the above employee and against the above employer and insurer as provided in the Missouri Workmen's Compensation Law, as follows:

"For permanent partial disability the sum of $20.00 per week for 108 weeks. said payments to begin as of June 1, 1936, and to be payable and be subject to modification and review as provided in said Law.

"Affirming on review Award dated March 26, 1937."

The award reviewed was one made by Referee Warner Woolverton of the commission upon hearing the employee's claim, which was based upon the following findings of fact and rulings of law made by him and adopted by the commission in its award:

"FINDINGS OF FACT AND RULINGS OF LAW
"Before the
"MISSOURI WORKMEN'S COMPENSATION COMMISSION
"Jefferson City, Missouri
."Accident No. M-57928
"Checked by WW :mdt

"Employee: Thomas F. Buckner.

"Dependants:

"Employer: Quick Seal, Incorporated.

"Insurer: Liberty Mutual Insurance Company.

"It is found that on or about June 1, 1936, Thomas F. Buckner was in the employment of Quick Seal, Incorporated, a major employer insured by Liberty Mutual Insurance Company; that said employment required employee to travel from place to place upon railroad trains; that on the date aforesaid, said employee while riding upon a passenger train in the course of his employment was assaulted by an intoxicated man riding on said train who struck employee over the face and right eye resulting in the loss of sight of said eye; the said employee doing nothing to aggravate or cause said assault.

"It is further found that said injury arose out of and as a result of said employment; that the weekly wage of said employee was $45.00 and the compensation rate is $20.00.

"Therefore, said employee is entitled to 108 weeks compensation, at the rate of $20.00 per week.

Date March 26, 1937.

"Made by Warner Woolverton,
"Referee, Missouri Workmen's Compensation Commission."

The defendants by their answer before the commission pleaded that the plaintiff had failed to give any notice of his alleged accident and injury until about August 10, 1936, and that the failure to give such notice, as required by the law, was a bar to the prosecution of the employee's claim and that both the employer and the insurer had been prejudiced by the failure of the employee to give notice as required by law. They did not set out in their answer how or in what manner they were prejudiced. They contented themselves with merely charging that they had been prejudiced.

It is to be noted that neither Referee Woolverton in his findings of fact or in his award nor the Compensation Commission in its findings or its award make any specific finding that the employee had given notice as required by said section or by law; nor did they make any specific finding that such notice had not been given by him. Both the findings and the award of the referee and the Compensation Commission are silent on the question of whether or not any notice was given.

The defendants contend that there is no evidence in the record upon which either the referee or the commission could have made a

281

specific finding that such a notice was given and that, a finding that such notice was given being necessary to support the award, it can not be approved.

It is not within the province of the appellate courts in reviewing an award of the Compensation Commission or a judgment of the circuit court affirming such award to consider the weight of the evidence before the commission or to determine the credibility of the witnesses; but such courts are required to consider the case before the commission as if it were one where the facts had been determined by the jury. [Travelers' Ins. Co. v. Davis (Mo. App.), 42 S. W. (2d) 945.] And they must view the evidence in the light most favorable to support the award (Lamkins v. Copper-Clad Malleable Range Corp. (Mo. App.), 42 S. W. (2d) 941, l. c. 943; State ex rel. Buttiger v. Haid, 330 Mo. 1030, 51 S. W. (2d) 1008, l. c. 1009) and draw all reasonable, favorable inferences therefrom to support the findings of the commission. [Elihinger v. Wolf House Furnishing Co., 230 Mo. App. 648, 72 S. W. (2d) 144, 337 Mo. App. 9, 85 S. W. (2d) 11.]

The defendants concede that, where the commission makes a general finding in favor of the employee and an award of compensation thereon, it is not necessary that a specific finding of each fact necessary to support the award be made by the commission and that the appellate court must presume that the commission found every fact necessary to support its award of which there is evidence. Such rule is so stated in State ex rel. Buttiger v. Haid, *supra*. They contend that the award of the commission can not stand in the absence of any evidence to support a finding of fact necessary to support the award, whether such finding was specifically made or not; that, even though it was not necessary for the commission to make a specific finding that the employee had complied with the provisions of section 3336, Revised Statutes of 1929, in giving the notice therein required, yet it was necessary for the commission to have sufficient competent evidence before it so that a reasonable inference could be drawn from such evidence in support of such finding in order to support its general verdict. They contend that there is no evidence in the record upon which the commission could have made a finding that the employee had given the notice required by said section or had complied with the provisions thereof.

An examination of the record reveals that the only testimony given in the cause relative to notice is that given by the employee, which is as follows:

"Q. When was it you arrived in Kansas City after the date of the accident? A. I will look at my book. I arrived in Kansas City from Louisville on June 27th early in the morning around seven o'clock and I left on the eight o'clock train again for Topeka, Kansas.

"Q. You arrived here on the morning of the 27th about seven and left about eight the same day? A. That is right.

"Q. At that time did you say anything to your employer regarding the condition of your eye? A. Well, I told him I had had a little trouble with my eye, but he was very busy and he had some parts from the foundry for this other job, and it was very urgent for me to go ahead, and I went on.

"Q. At that time were your eyes showing any effects from the blow? That is, I mean discoloration or redness. A. There was just a little of the red streak or bloodshot—whatever you call it—in there, but the blur has been there ever since.

"Q. And the blur was there immediately after the accident, you mean? A. It never did clear up.

"Q. After you went to Topeka when was the next time you came back to Kansas City? A. The 29th of July.

"Q. Now, from the time you arrived here on the 27th of June, to the 29th of July, were you out on the road working for the company all of the time? A. Yes.

"Q. When you arrived here the second time, on the 29th of July, did you have some discussion about your eye with your employer? A. I did.

"Q. And did they suggest you go to any one of these doctors, Dr. Simpson and Dr. Mullen, or did you go of your own volition? A. I went to these doctors of my own accord, these two doctors, but they advised me to see a doctor immediately.

"Q. Who advised you? A. Mr. Sticelber, the owner."

While section 3336, *supra*, is clearly for the benefit of an employer and provides for written notice to be given the employer by the employee, yet, when all of its terms are considered, the giving of the notice required is not an unconditional prerequisite to recovery but may be excused if the commission finds that there was good cause for failure to give it or that such failure did not prejudice the employer. [McFall v. Barton-Mansfield Co., 333 Mo. 110, 61 S. W. (2d) 911.] The failure to give the notice is not fatal where the commission finds that there was good cause for such failure or where the commission finds that the employer was not prejudiced by such failure.

The award in this case is therefore not unauthorized by reason of the fact, if true, that there is no evidence in the record upon which to base a finding of fact that written notice was in fact given if there is evidence to be found in the record upon which a finding that there was good cause for failure to give such notice might be based or if it may be gathered from the whole record that the employer was not prejudiced by the failure to receive such notice.

That there is evidence in the record sufficient to sustain the award on the basis of either of such alternatives, we do not have any doubt.

It is good cause for failure to give such notice within thirty days that the injury did not appear until more than thirty days after the accident. [State ex rel. Buttiger v. Haid, *supra.*]

The evidence in the record in this case is subject to the inference therefrom that the permanent nature of the employee's injury entailing the loss of vision, for which compensation is herein sought, did not appear and was not reasonably discoverable until more than thirty days after the date of the accident causing the injury.

In the case of Gleason v. Titanium Pigment Co. (Mo. App.), 93 S. W. (2d) 1039, l. c. 1043, the St. Louis Court of Appeals said: "It has been held repeatedly that the limitation period does not necessarily commence to run when the accident occurs, but that where the condition produced by the accident is a latent one, the right of action accrues and the limitation period commences to run from the time when it becomes reasonably discoverable and apparent that a compensable injury has been sustained. [Wheeler v. Missouri Pac. Ry. Co., 328 Mo. 888, 42 S. W. (2d) 579; Schrabauer v. Schneider Engraving Product, 224 Mo. App. 304, 25 S. W. (2d) 529.]"

There is ample evidence in the record in this case upon which the commission was authorized to make the finding that it never became reasonably discoverable and apparent to the employee that he had suffered a permanent and compensable injury to his eye resulting in the loss of vision until July 29, when he returned to Kansas City and, upon advice of the employer, saw a doctor and, upon examination of his eye by the doctor, found that he had suffered such permanent injury and that the injury thus produced by the accident was a latent one, of which he had not previously known. There is evidence to show that, the next day after the accident, the employee treated his eye until noon, until the discoloration had largely disappeared therefrom, and went about his work without any especial unusual discomfort. Upon his return to Kansas City early in the morning of June 27, where he remained for less than an hour, he advised his employer that he was having trouble with his eye; but, being urged by the employer to go at once to Topeka, Kansas, and do some work waiting for him there, he immediately left for that place, where he remained until July 29, engaged in looking after the work assigned him at that point. Not having lost any time on account of his injury, he knew that he was not entitled to compensation on that theory; but he was not aware that he had suffered a permanent injury and a loss of vision for which he was entitled to compensation until consultation with his doctor, when it was found, upon examination by the doctor, that such permanent injury had been suffered. That he had suffered such compensable injury to his eye—that is, permanent injury entailing a loss of vision—did not appear until that date, which was more than thirty days after the injury. From the time of his injury to July 29, he was constantly

upon the road on his employer's business and had no knowledge of the permanent character of his injury; and it, being latent, did not become reasonably discoverable by him and apparent to him prior to that date or upon that date until he underwent an examination by his doctor, when it was revealed.

We think that, under the circumstances thus shown by the record, there was sufficient proof upon which to base a finding of good cause for failure to give written notice within the statutory time.

There is evidence upon which to base the finding that the employer and his codefendant were not prejudiced by the failure to receive the statutory written notice of the employee's injury. In their answers, the employer and his codefendant pleaded, as a defense to the employee's claim, that the first notice given of the employee's accident was about August 10, 1936, and that they had been prejudiced by the failure of the employee to give notice of his accident as required by law (which was a written notice of such accident within thirty days after it occurred) and that his failure to give such notice was a bar to his claim. They do not, however, set up how or in what manner they were prejudiced by such failure; nor did they offer any evidence upon the trial of what prejudice, if any, resulted to them by reason of such failure or how or in what manner it arose; but they seemed to have permitted their claim of prejudice to rest upon a mere implication thereof from a failure to give such notice. This, however, is not sufficient. Where prejudice is claimed, it must be shown. Prejudice is not to be presumed from mere delay in giving notice. Prejudice must be actual and must be shown to be actual. [St. Paul & K. C. S. L. R. Co. v. U. S. Fidelity & Guaranty Co. (Mo. App.), 105 S. W. (2d) 14, l. c. 25.]

The record shows that, on June 27, which was within thirty days after the accident, the employee advised the employer that he was having trouble with his eye. The record does not show that the matter was gone into further at that time. The employer at that time was urging the employee to leave at once for Topeka, Kansas, to look after work awaiting him there. The employee went as directed. The employer at that time knew the employee had been out on the road in its service for some weeks and must have known that the trouble with the employee's eye had arisen during the time that the employee was out working for it. It had an opportunity at that time to make inquiry of the employee as to the further details of the trouble he was having with his eye and as to when, where, and how the trouble arose. The record does not show, however, that it embraced such opportunity. However, it later seems to have acted on such notice when the employee returned on July 29 from Topeka and it advised the employee to see a doctor at once. While such notice was not such as that required by the statute, it was, nevertheless, a notice; and, however imperfect, it could have been followed up by the

employer if it had so desired; and it could, by so doing, have acquired full knowledge.

Such notice operated as actual notice.

In Schrabauer v. Schneider Engraving Product, 224 Mo. App. 304, 25 S. W. (2d) 529, the St. Louis Court of Appeals held that, where actual notice is shown by an employee, a *prima facie* showing of want of prejudice is made and thereupon the burden is upon the employer to show that, notwithstanding that notice was given, he had still been prejudiced. This case, upon this point, was referred to and discussed with approval by the Supreme Court in McFall v. Barton-Mansfield Co., *supra*. The same doctrine was asserted in State ex rel. Buttiger v. Haid, *supra,* where actual notice was shown.

See also to like effect in this connection Evans v. Chevrolet Motor Co., 105 S. W. (2d) 1081, l. c. 1084, where it was said by the St. Louis Court of Appeals, "In view of all such circumstances, the burden was upon the employer, if it was serious in urging the point, to show that notwithstanding the actual notice which it had, it had nevertheless been prejudiced in some material manner by failure to have received the technical statutory notice, and no showing of prejudice having been made, the claim is not to be barred because of Evans' noncompliance with the statutory requirements," citing State ex rel. Buttiger v. Haid, *supra*; and Schrabauer v. Schneider Engraving Product, *supra*.

In the case of Johnson v. Scott County Milling Co. (Mo. App.), 101 S. W. (2d) 123, l. c. 129, the Springfield Court of Appeals said:

"Appellant company does not allege and its brief makes no attempt to point out, how it was prejudiced in any wise, by failure to receive written notice.

"Section 3336, R. S. Mo. 1929 (Mo. St. Ann., sec. 3336, p. 8268), after providing that workmen should give their employers written notice within thirty days after an accidental injury, concludes as folows: '. . . unless the commission shall find that there was good cause for failure to give such notice, or that the employer was not prejudiced by failure to receive such notice.'

"The commission was therefore fully justified in finding there was good cause shown for failure to give written notice, and that the appellant company was not prejudiced by failure to receive written notice as provided by section 3336, R. S. Mo. 1929."

Such court in that connection cited a number of cases from the Supreme Court and the Courts of Appeals in support thereof.

How, then, stands the record in this case as to prejudice to the defendants by failure of the employee to give them written notice? That they were in any way prejudiced is impeached by the evidence of actual notice to them therein, showing that there was no prejudice to them, while there is an utter lack of evidence to the contrary, tending to show that they were prejudiced.

It follows that the defendants' point under consideration is not well made and must be ruled against them.

2. The defendant next contend that there is no competent evidence in the record to justify a finding that the employee's injury was one—in the language of the statute—"arising out of" his employment.

In order to be compensable, an employee's injury must be by accident "arising out of" and "in the course of" his employment. [Section 3301, R. S. 1929.]

The defendants, while denying that the accident happening to the employee in this case which occasioned his injury was one "arising out of—his employment," concede that it happened "in the course of his employment."

It is said that arising "out of" and arising in the "course of" as used in the Compensation Act are not synonymous. However that may be, it is difficult to conceive of an accident arising out of the employment and not in the course of it. Nevertheless, under the concession made, the only question with which we are concerned is whether the evidence was sufficient to warrant the finding that the accident arose "out of his employment." [Lejlich v. Chevrolet Motor Co., 328 Mo. 112, 40 S. W. (2d) 601, l. c. 605.]

Much is said in the briefs concerning the significance of the words "arising out of" in their setting in the statute and the construction to be given them and the requirements necessary to bring an accident within their application—whether the danger by which the accident was brought about must inhere in the employment itself or whether it may be incidental only to the employment. Such words refer primarily to the origin or cause of an accident and are descriptive of it.

The defendants insist that it is not sufficient that the accident producing the injury happened "in the course of" the employment but that, by the use of the words "arising out of," the statute requires that the danger from which it occurs must have inhered in and arisen out of the employment; that any accident to the employee to which all persons similarly situated were equally exposed, having no connection with the particular employment, is excluded from the operation of the statute providing for compensation; and that a risk common to the business which is not increased by the hazards of the employment does not come within such words.

In Wahlig v. Krenning-Schlapp Grocer Co., 325 Mo. 677, l. c. 683, 29 S. W. (2d) 128, l. c. 130, the Supreme Court said, "It has been quite uniformly held that an injury arises 'out of' the employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury."

In Beem v. H. D. Lee Mercantile Co., 337 Mo. 114, 85 S. W. (2d)

441, it was said that the words "arises out of" signify a causal connection between the injury and the employment.

In Smith v. Levis-Zukoski Mercantile Co. (Mo. App.), 14 S. W. (2d) 470, l. c. 472, it is said: "Likewise it is commonly held that an injury may be said to arise 'out of' the employment, when it is reasonably apparent, upon a consideration of all the facts and circumstances, that a causal connection exists between the conditions under which the employee's work is required to be done, and the resulting injury. In other words, an injury arises out of the employment if it is a natural and reasonable incident thereof, even though not foreseen or anticipated; but, in all events, it must be the rational consequence of some hazard connected therewith. [Kiser on Workmen's Compensation Acts (40 Cyc.), sections 64, 65; 1 Schneider on Workmen's Compensation, sections 262-281.]"

In Price v. Kansas City Public Service Co. (Mo. App.), 42 S. W. (2d) 51, l. c. 53 and 54, this court said: "It is the generally accepted rule that an injury may be said to arise 'out of' the employment when it is reasonably apparent, considering all the facts and circumstances in evidence, that a causal connection exists between the conditions under which the employee's work is required to be done and the resultant injury. In other words, an injury arises out of the employment if it is a natural and reasonable incident thereof, even not foreseen nor anticipated, but it must be a rational consequence of some hazard connected therewith."

Notwithstanding the general statements above noted, it is said that there is no set rule applicable for the determination, in every case, of whether the employee's injuries did or did not result from an accident arising out of his employment. Every case involving the application of such words rests upon its own particular facts. [Sawtell v. Stern Bros. & Co., 226 Mo. App. 485, 55 S. W. (2d) 264; Sweeny v. Sweeny Tire Stores Co., 227 Mo. App. 93, 49 S. W. (2d) 205; Leilich v. Chevrolet Motor Co., *supra.*]

In the last cited case, it is said, l. c. 605 of 40 S. W. (2d): "Since the adoption of workmen's compensation acts, in England and then in this country, there have been many definitions of the phrase 'arising out of—his employment' essayed by the courts. Some of these definitions, framed by eminent courts in view of the facts of the particular cases before them, have been repeated so often by other eminent courts that they have become formulae, to some one of which, it is thought, the facts of every case must conform in order for compensation to be allowable therein. [Wahling v. Grocer Co. (Mo.), 29 S. W. (2d) 128; Cassidy v. Eternit (Mo.), 32 S. W. (2d) 75; Jackson v. Investment Co., *supra.*] There is no justification for investing the words 'arising out of — his employment' with a technical meaning; they are plain, ordinary, and everyday words, and should therefore be given their plain, usual, and ordinary mean-

ing. Every case involving their application should be decided upon its own particular facts and circumstances and not by reference to some formulae.''

Whether the accident in question, as a result of which the employee suffered the loss of vision to his right eye, was one ''arising out of'' his employment, within the meaning of those words as used in section 3301, *supra,* is therefore a question to be determined from the particular facts and circumstances in evidence in this case touching his employment and such accident.

The record shows that, at the time of his injury, the employee was in the service of the employer as a mechanic, repairing and installing refrigeration machinery for the employer at different points over the country, in which service he was required to go from place to place by railroad train. At the time of his accidental injury, he was en route from New Orleans by train, on which he was a passenger, to Jacksonville, Florida, in the course of his employment to install a new machine which had been delivered by the employer to a customer at that latter point. That he was on such train in the course of his employment is admitted by the defendants. While thereon, he was assaulted by one Sundre, who was riding thereon and professed to be an expert wrestler. Such assault upon the plaintiff was as to him and accident. The employee had never seen Sundre prior to the time of such assault and had never had any previous communication with him. The assault made by Sundre was sudden, unexpected, and violent and was without any provocation or justification whatever. In the course of such assault, Sundre struck the employee a severe blow over his right eye and otherwise roughly and severely handled him. · The assault occurred in a narrow aisle leading from the coach in the train in which the employee was riding to the smoking room in the rear thereof. The employee had left his seat in the coach to go into the smoking room; but, upon reaching the smoking room, he found it crowded and remained standing in the aisle or a small vestibule at the end thereof, when Sundre, weighing 297 pounds and very drunk, approached and took hold of him and assaulted him in the manner stated, seeking to demonstrate his expert ability as a wrestler. The employee, as situated at the time, could not retreat or escape from him. He was against the back of the coach in the aisle or vestibule. It was impossible for him to move to the front for the reason that Sundre with his 297 pounds blocked the way and he could not pass him. He merely had to stand and take the treatment given him by Sundre. As a result of the severe blow over the eye, it became bloodshot and painful; and the employee suffered the loss of the vision thereof.

The proximate cause of the employee's injury was the uninvited and unprovoked assault made on him by Sundre, in which he received from Sundre the severe blow over his eye. The causal con-

nection between such assault and blow and his injury is clearly established by the evidence. There is nothing in the record to account for the loss of vision to the employee's eye other than the severe blow given the employee by Sundre over it; and there is expert testimony that such loss of vision could have been caused by the blow given.

Such being true, the only further question is whether the assault upon him by Sundre and the accidental injury following therefrom arose out of the employee's employment or was so connected therewith as to be incidental thereto. That the employee's employment not only covered the place where he repaired and installed machinery for his employer but also covered his traveling from place to place for the purpose of making such repairs or installments, we think that there can be no doubt. It is, in fact, conceded by the defendants, as hereinbefore stated, that he was on the train in the course of his employment. It is difficult to understand how he was in the course of his employment riding on the train at the time the accident occurred and such accident not have arisen out of his employment.

The defendants argue that, while there was a causal connection between the assault upon the employee and his injury, there was no causal connection between the assault or his injury and his employment or the work that he was required to do for his employer—that is, the work of repairing an installing machinery for the employer at any given place. In doing so, however, the defendants overlook the fact that the employee's employment covered not only the actual work of repairing and installing but covered also his passage on the train in order to do such work. That his employment covered not only the repairs upon and the installation of machinery but covered his traveling from place to place on the train is well settled. [Beem v. H. D. Lee Mercantile Co., *supra*; Wahlig v. Krenning-Schlapp Grocer Co., *supra*; Shroyer v. Missouri Livestock Commission Co., 332 Mo. 119, 61 S. W. (2d) 713; Schulte v. Grand Union Tea & Coffee Co. (Mo. App.), 43 S. W. (2d) 832; Duggan v. Toombs-Fay Sash & Door Co., 229 Mo. App. 61, 66 S. W. (2d) 973.]

The defendants argue further that the unprovoked assault by one passenger upon another while riding on a train is not within the contemplated hazards of travel on a train. The fact, however, that such assault was unanticipated does not remove the employee from the protection of the statute so long as he was on the train in the course of his employment, which it is admitted in this case that the employee was. His employment subjected him to the exposure to all perils on the train on which he was riding. When a workman is sent by his employer to travel on a train on the employer's business, his employment necessarily involves exposure to the risks of such travel; and an injury from such cause necessarily arises out of his employ-

ment. The train becomes a dangerous place when ruffians are aboard, as they sometimes are. The danger of being assaulted and struck by such ruffians by accident is a risk of travel by train, because it is incident to being on the train when ruffians or reckless characters are aboard. The question is whether the employment exposed the employee to the risk by sending him on the train and not whether such risk was common to all on the train. [Beem v. H. D. Lee Mercantile Co., *supra*; Katz v. A. Kadans & Co., 232 N. Y. 420, 134 N. E. 330.]

It is argued that such accident might have happened to the plaintiff if he had not been in the employment of the employer. And so it might. However, the employee was on the train by reason of his employment and by reason of such employment alone. It was by reason of his employment that he was subjected to the hazard of travel on the train and subjected to the assault on him and the injury following therefrom. The causal connection between his accident and injury and his employment thus appears. It is true that the dangers to which the employee was subjected must have resulted from the place to make it a train risk; but it is enough if the employee was in the place by reason of his employment and in discharge of his duties to his employer.

We have examined the various authorities cited by the defendants in support of their various points and contentions and do not find them controlling so far as the facts and circumstances of this case are concerned. The case which most fully, at least by analogy, covers the facts and circumstances of this case and disposes of various points raised herein in a manner that is controlling in this case is that of Beem v. H. D. Lee Mercantile Co., *supra*. In that case, the Supreme Court affirmed an award granting compensation where a traveling salesman was, by a robber, shot and killed while traveling in the course of his employment upon a public highway. There is no great difference in the principles to be applied where an employee is sent upon a public highway, such as a road or street, on his employer's business, when subjected to hazards on the street and to accidental injury (as in the Beem Case), and where an employee is sent to travel on a railroad train by his employer upon his employer's business and is subjected to the hazards of traveling on the train and actual injury (as in this case). In that case, after stating the facts, the court disposed of certain questions raised which were of the same import as certain questions raised in this case, which we have applied as the law in this case, as follows (l. c. 442 and 443 of 85 S. W. (2d):

"We think that appellants' learned counsel concede that the word 'employment,' when applied to a traveling salesman, includes both traveling from place to place and selling goods; and that an accidental injury or death arising out of and in the course of his employ-

ment covers both the time and place of the traveling as well as the selling of goods. This is the construction placed on our statute, following the construction placed on similar statutes by other courts, by this court in Wahlig v. Krenning-Schlapp Grocer Co., 325 Mo. 677, 29 S. W. (2d) 128, 131, and that ruling has been steadily adhered to. [Shroyer v. Missouri Livestock Commission Co., 332 Mo. 1219, 61 S. W. (2d) 713; Schulte v. Grand Union Tea & Coffee Co. (Mo. App.), 43 S. W. (2d) 832; Duggan v. Toombs-Fay, Sash & Door Co. (Mo. App.), 66 S. W. (2d) 973.] The Wahlig Case involved the question of whether a traveling salesman, who was injured by a train at a railroad crossing while he was traveling in his automobile going to see a customer in order to sell him goods, suffered injury from an accident arising out of and in the course of his employment. This court so held and said: 'The courts of Great Britain and a large majority of our sister states have consistently held that street accidents may arise out of and in the course of one's employment. The following quotations are very illuminating on this question: "If a servant in the course of his master's business has to pass along the public street, whether it be on foot or on a bicycle, or on an omnibus or car, and he sustains an accident by reason of the risks incidental to the streets, the accident arises out of as well as in the course of his employment." [Dennis v. A. J. White & Co. (1917), A. C. 479 Ann. Cas. 1917E (325), loc. cit. 326.] "The danger must result from the place to make it a street risk, but that is enough if the workman is in the place by reason of his employment, and in the discharge of his duty to his employer." [Katz v. A. Kadans & Co., 232 N. Y. (420), loc. cit. 421, 134 N. E. 330, 331, 23 A. L. R. 401.] . . . "It is a well-established rule of law in compensation cases that, where an employee in the performance of his duties as a traveling salesman is required to use the streets of a city (or public roads of the country), such streets become his place of work, and the hazard incident to travel thereon, including the danger of coming in contact with moving street cars, is a danger incident to his employment. . . ." [Capital Paper Co. v. Conner, 81 Ind. App. 545, loc. cit. 547, 144 N. E. 474, 475.]' And the court there further said: 'It is our conclusion that the duties of Wahlig's employment necessarily exposed him to the danger of having his automobile struck by a train while traveling in his automobile on and along public streets and thoroughfares, and that the injuries which resulted in his death were the direct and natural result of a risk reasonably incident to his employment.' "

It proceeded on page 446 thereof:

". . . The assault in this case was on the deceased while using the highway in his employer's business, and it matters not whether it was indirectly aimed at the deceased's money or his employer's money. What the court said in Katz v. A. Kadans & Co., 232 N. Y.

420, 134 N. E. 330, 331, 23 A. L. R. 401, where a dairy truck driver was killed on the street in the course of selling and delivering milk by an insane man, is applicable here: 'If the work itself involves exposure to perils of the street, strange, unanticipated, and infrequent though they may be, the employee passes along the streets when on his master's occasions under the protection of the statute. This is the rule unequivocally laid down by the House of Lords in England: "When a workman is sent into the street on his master's business . . . his employment necessarily involves exposure to the risks of the streets and injury from such a cause (necessarily) arises out of his employment." . . . The danger must result from the place to make it a street risk, but that is enough if the workman is in the place by reason of his employment, and in the discharge of his duty to his employer. The street becomes a dangerous place when street travelers, highwaymen . . . are afoot therein as they sometimes are. The danger of being struck by them by accident is a street risk because it is incident to passing through or being on the street when dangerous characters are abroad. . . . The question is whether the employment exposed the workman to the risks by sending him on to the street, common though such risks were to all on the street.' [See, also, the following cases: Industrial Commission v. Hunter, 73 Colo. 226, 214 Pac. 393; Rosmuth v. American Radiator Co., 201 App. Div. 207, 193 N. Y. 769; Vivier v. Lumberman's Indemnity Exchange, 250 S. W. 417 (Tex. Com. App. 1923); Goodwin v. Bright, 202 N. C. 481, 163 S. E. 576 (1932).]

"We do not think the case of Sweeny v. Sweeny Tire Stores Co., 227 Mo. App. 93, 49 S. W. (2d) 205, is in conflict herewith. What the court there said as to the robbery resulting in the decedent's death growing out of the protection and preservation by decedent of his employer's property rather than his own property was because that fact alone or to a large extent established in that case the causal connection between the accident and the employment, and such, if proven, would be true here. In the present case, however, the causal connection between the accident and the employment is not dependent on proof that the deceased was at the time protecting or trying to protect his employer's property, but grows out of the fact that his traveling this road at that time was part of and reasonably connected with his employment. The deceased's employment reasonably covered traveling over this road at that time and traveling over the road exposed him to the hazard of highway robbery. That establishes the causal connection.

"We hold, therefore, that deceased's death was a compensable accident both arising out of and in the course of his employment by the defendant and affirm the judgment of the trial court. It is so ordered."

We, therefore, in this case, rule the point against the defendant. The judgment of the trial court is affirmed. All concur.