Ruth V. HEUSMANN, Administratrix of the Estate of Otto E. Heusmann, Deceased, Petitioner-Respondent,

v.

H. Sam PRIEST, John H. Poelker, N. A. Sweets, Eugene P. Walsh, Thomas L. Moran, George Milne and Robert W. Matteson, constituting the Members and Board of Trustees of the Alternative Police Retirement System of St. Louis, Appellants.

No. 31330.

St. Louis Court of Appeals.

Missouri.

March 19, 1963.

Thomas J. Neenan, City Counselor, Aubrey B. Hamilton, Assoc. City Counselor, St. Louis, for appellants.

Everett Hullverson, Corinne Richardson, Hullverson, Richardson & Hullverson, St. Louis, for respondent.

SAMUEL A. DEW, Special Commissioner.

Otto Heusmann (hereinafter called the claimant) was a police officer of the City of St. Louis, Missouri. On February 23, 1961, he applied to the Board of Trustees of the Alternative Police Retirement System, in effect in that city, for retirement benefits allowable to retired policemen for accidental disability under Section 86.267(1) RSMo 1959, V.A.M.S. The Board denied the claim but voted to approve the lesser benefits to the claimant for ordinary disability under Section 86.260, if he should file an application on that basis. Thereafter, on March 1, 1961, claimant retired from the police department and filed a claim for benefits for ordinary disability, but requesting a hearing on his previous application for accidental disability. The Board thereupon granted such a hearing, again denied the claim and reaffirmed its approval of benefits for ordinary disability. Upon a review of the proceedings in the circuit court, the court reversed the determination of the Board and remanded the case for further proceedings accordingly. From such judgment of the circuit court the Board took the present appeal. On July 27, 1962, pending this appeal, the claimant died and his widow, executrix of his estate, was substituted as respondent herein.

The qualifications of a member of the above mentioned Police Retirement System for benefits based upon a claim of accidental disability are prescribed by Section 86.263 as follows:

"Upon application by the member or the board of police commissioners any member who has become totally and permanently incapacitated for duty as the natural and proximate result of an accident occurring while in the actual performance of duty at some definite time and place through no negligence on his part, * * * shall be retired by the board of trustees provided that the medical board shall certify that such member is mentally or physically incapacitated for further performance of duty, that such incapacity is likely to be permanent and that such member should be retired * * *".

Upon review in the circuit court the parties appeared by counsel and agreed to submit the petition for review solely upon the transcript of the proceedings before the Board of Trustees.

The transcript of the proceedings before the Board contains testimony of the claimant that he began his services as a police officer in St. Louis in 1942; that he retired March 1, 1961; that he left the force because of two severe heart attacks; that he retired on the advice of physicians to seek a less strenuous type of work; that he had since been drawing benefits of 25 percent as a pension merely on his medical examination; that while on the force he performed all of the general assignments of duty as directed, including, at times, assisting in subduing unruly prisoners; that in 1955 he began to have intermittent chest pains which he thought were then caused by indigestion; that in 1955 he consulted the department surgeon, who, after several treatments, advised him to seek some sedentary service in the department. He stated that the doctor wrote to the chief of the medical staff recommending claimant's transfer to a more inactive kind of work; that in 1957, he was placed on the Municipal Opera detail, which consisted of traffic direction, parking vehicles, and keeping alert for any emergency situation, but that such work proved to be no less strenuous than regular assignments to which he was returned.

Claimant testified that in May, 1959, while on general duty, he assisted in subduing a

drunken driver, who, in the scuffle, tried to grab claimant's revolver from him; that after the arrest he experienced severe chest pains and was taken to the hospital for emergency treatment. He said that he had suffered a similar attack in 1958, while carrying some heavy cases from a building, causing him to lose several days of service. He stated that thereafter he consulted department doctors and a complete checkup was recommended; that in 1959, he was again seized with violent chest pains at the Municipal Opera which lasted two and one-half hours; that he did not then know it was a heart attack but had been advised of his hypertension. Regarding the incident at the Municipal Opera he stated that there was a shortage of personnel on that occasion and he had to be very active in the parking of over 800 cars in 50 minutes, and later was compelled to lie down in the parking lot for two hours because of his chest pains. He was sent home and later to the hospital, where he was kept under sedation for two weeks. His doctor, he said, had written a letter in 1957, strongly recommending that he be assigned less active duty. In 1961, Dr. Thoma disqualified him from active police duty.

The claimant testified that prior to and after 1955, he was active in sports, playing handball at the gymnasium and softball, Indian ball and games of that type; that up until 1958 or 1959, he occasionally played softball or paddled around in the swimming pool. He said his chest pains always followed physical exertion; that prior to 1959, his cardiogram did not show any heart condition, but that he had a history of hypertension. He said that after returning to general police duty he was again assigned to the Municipal Opera in 1960, until he was finally disqualified March 1, 1961.

Dr. Milton Smith testified that in 1955 he examined claimant, who was complaining of chest pains after physical effort; that he had previously operated on the claimant for hemorrhoids; that in 1955, claimant had abnormally high blood pressure; that

prescriptions were given him and a less strenuous line of duty was recommended. Witness saw claimant 23 times, treating him for high blood pressure with alternating success; that the cause of claimant's condition then was coronary artery insufficiency, resulting in pains following physical exertion; that he had twice written the police department urging that the claimant be assigned to less strenuous duties. He said that if the claimant did not follow orders to avoid physical exertion, such failure would be a factor in the subsequent events.

The claimant introduced a letter written by Dr. George E. Thoma, department physician, dated February 20, 1961, addressed to the Medical Board of the Alternative Police Retirement System in which he stated he had first seen claimant August 13, 1959, at which time claimant complained of severe retrosternal pains of two days' duration; that there was a prior history of diaphragmatic hernia, duodenal ulcer and high blood pressure for a number of years; that the electrocardiogram revealed a recent anterior myocardial infarction and an older posterior myocardial infarction; that the usual coronary regime was applied, including anticoagulant therapy; that the examination also disclosed a duodenal ulcer with crater and hiatus hernia; that six weeks' hospitalization ensued, followed by outpatient treatments; that claimant's blood pressure remained elevated and claimant continued to have intermittent chest pains due to coronary insufficiency.

Dr. Thoma, in his letter to the Alternative Police Retirement System of February 20, 1961, above mentioned, further stated that on January 14, 1961, he examined claimant and noted purpura of the legs of the patient, and mucosa of the mouth; that there had been an increase in the frequency and severity of chest pains; that he was sent again to the hospital where a myocardiogram revealed a recent myocardial infarction; that the claimant was again discharged from the hospital February 4, 1961. Dr. Thoma wrote that in view of three

distinct episodes of myocardial infarction, persistent hypertension and angina pectoris, claimant was physically unable to perform the duties of a patrolman.

Referring to the above letters of Dr. Thoma and the claimant's condition as stated therein, counsel asked Dr. Smith if claimant might have lived a normal life if he had not engaged in strenuous exercise or activity, to which the witness replied that it would depend on whether the claimant would submit himself to treatment "in keeping his blood pressure down", and "Only the Lord knows what would have happened to him, people without high blood pressure can get heart attacks". At one point the witness said: "People can get pains in their chest from exertion and sometimes without exertion"; that "a normal person without any heart condition at all could get chest pains if he had rapid exertion"; this, he said, is due to the splitting of the blood through the arteries of the heart and consequent insufficiency of oxygen there; one can have "heart trouble with pain and not have a heart attack"; that during his treatment of the claimant there was no sign of heart attack but of heart trouble. As to the later infarction shown in Dr. Thoma's report of August, 1961, witness said that the dates of the occurrences of the infarctions could not be pinpointed; that it might be two months or a year or may occur "in an acute form and stabilize themselves over a period of six weeks to two months so that the changes would be permanent". He said strenuous athletic or physical activities would likely cause a heart attack.

Dr. Max Franklin, a heart specialist, testified in behalf of claimant. According to his testimony he examined claimant in April, 1961, and from an electrocardiogram he found claimant had sustained an old posterior infarction and two more recent anterior infarctions of undetermined dates. Under the conditions the witness said he would advise against active police duty to avoid arteriosclerosis. He said that in his opinion claimant's heart attacks were in-duced as a direct result of the work required of him involving exertion; that claimant was not able to perform the duties of a police officer. He stated that if a person were suffering from high blood pressure such as claimant had, the occurrence involving the scuffle with the drunken driver could have caused a coronary infarction; that the exertion at the Municipal Opera could have caused the second infarction. He was asked: "You wouldn't be able to tell, would you, from the information available to you whether a particular game of handball or a particular strenuous exertion on the police force in line of duty caused this particular heart condition? A. From what information I have, no."

Appellants' Exhibit No. 1 is the record of the proceedings under claimant's application for accidental disability.

Appellants' Exhibit No. 2, from the Board's files, contains excerpts from the hearing on claimant's application for accidental disability benefits.

Appellants' Exhibit No. 3 is a communication dated June 13, 1958, from the Medical Director of the Police Department to the Chief of Police respecting claimant's condition and the danger of his continued strenuous physical activity, suggesting that the condition was permanent but that the claimant could perform some less strenuous duties of the service.

Appellants' Exhibit 4, dated February 4, 1961, is a report from a hospital to the Police Department on claimant's condition of hypertension and notice that he had been discharged from the hospital for outside treatment.

Appellants' Exhibit 5, dated February 17, 1961, consists of "conclusions" of three physicians of the Medical Board of the Alternative Police Retirement System as to the effect of the alleged injuries on claimant's present condition, in view of his medical history to date. One physician stated therein that claimant's "hypertension and sclerotic changes of arterial system—

are contributing factors in Cardiac Complex. Initial Coronary Attack 1959—precipitated by scuffle in line of duty." The second physician reviewed claimant's medical history, mentioned his hypertension as of 1959, the repeated angina attacks following the scuffle of 1959 and noted one infarction as of August 23, 1959. He did not otherwise state an opinion of the effect of the alleged injuries upon claimant's present condition. The third physician stated that the scuffle in 1959, precipitated an infarction in May, 1959, which was transitory in effect; that the second attack was the result of the first.

Appellants' Exhibit No. 6 is claimant's letter enclosing his application for retirement benefits for ordinary disability and his request for a hearing on his claim for accidental disability as heretofore mentioned.

Appellants' Exhibit 7 is claimant's final application for ordinary disability.

Appellants' Exhibit 8 is the police report of May 29, 1959, on the incident of claimant's scuffle with the irate drunken driver which claimant contends was one of the causes of his accidental disability.

Appellants' Exhibit 9 is claimant's medical record in the Police Department showing dates of his sickness and the time lost, which included an entry of March 12, 1958 for "pains in the chest"; one dated May 29, 1959, for "chest pains"; one dated August 23, 1959, "heart condition", and one of January 14, 1961, "hemorrhaging—result of heart medication".

The appellants offered no proof at the hearing other than the foregoing documentary evidence.

The claimant's Exhibit "A" is a letter dated June 20, 1957, from Dr. Smith to the Medical Director of the St. Louis Police Department, advising that claimant had severe hypertension since 1955, and should avoid active physical exertion and should be employed in a sedentary type of work.

Claimant's Exhibit "B" dated June 11, 1958, is a second letter from Dr. Smith to the Medical Director of St. Louis Police Department restating claimant's condition—and again urging that claimant be assigned to less strenuous duties.

Claimant's Exhibit "C" is the letter of February 20, 1961, from Dr. Thoma to the Medical Board of the Alternative Police Retirement System read in evidence as hereinbefore noted.

At the close of the hearing by the Board of claimant's reconsidered claim for retirement benefits for accidental disability, the Board found that claimant had a heart ailment as early as 1955; that he was currently suffering from a heart condition and was incapacitated for further police duty; that there was no causal connection between the claimant's "present physical condition * * * and any accident or event occurring while in the discharge of his duty as a policeman"; that claimant "is not entitled to Accidental Disability Retirement Benefits, and his claim therefor is accordingly denied". The Board reaffirmed its former allowance of benefits for ordinary disability.

Upon review in the circuit court the court decreed that the Board's decision was not supported by competent and substantial evidence upon the whole record; that its findings were arbitrary and unreasonable and not based on substantial evidence; that its decision was based on hearsay evidence and should be reversed and the case remanded for further proceedings. It was so ordered.

Respondent concedes appellants' Point III, namely, that the court erred in so far as it placed its judgment on the ground that the Board's decision was based on hearsay evidence which, being relevant and received without objection, has probative force.

Respondent, asserting that the facts are undisputed, agrees with appellants' Point IV, that the only issue on review in

this case is the application of the law to the facts, and that under such circumstances the circuit court on review had, and this court on appeal now has, the power to weigh the evidence and to make their own findings. As we construe the case the vital fact as to whether, specifically, the claimant's total and permanent incapacity for duty was "the natural and proximate result of" the two occurrences in 1959, as claimed, and at such "time and place", is not admitted but is positively controverted. Section 86.-263. Hence we believe that neither the circuit court nor this court has the power and authority, under the record as a whole, to weigh the evidence for itself and to make its own findings of fact. Section 536.140(3).

The gist of the appellants' remaining points I, II and V, is that the court erred in ruling that the Board's decision was unsupported by competent and substantial evidence upon the whole record, which record must be viewed in the light most favorable to the decision of the administrative agency, and does support the Board's decision, which was neither arbitrary nor unreasonable; that under the rule of due deference to the Board's opportunity to observe the witnesses, its decision should be affirmed and the judgment of the trial court reversed. Section 536.140(3).

It is noted by the respondent that appellants do not contend that the claimant's scuffle with the unruly prisoner and his exertion in parking cars at the Municipal Opera were not "accidents" in the legal sense. Respondent, however, cites in support of such construction of that term Buckner v. Quick Seal Inc., et al., 233 Mo. App. 273, 118 S.W.2d 100, 111, and Crow v. Missouri Implement Tractor Co., et al., Mo., 307 S.W.2d 401, 405(1). Because of the disposition which we must hereinafter make of the contentions in this case, it is not essential that such issue be considered or adjudged in this appeal.

It will be recalled that Dr. Franklin, while testifying that, in his opinion, the occurrence of a scuffle with a drunken driver on May 29, 1959, and the incident of the parking of cars at the Municipal Opera in August, 1959, "could have caused" the claimant's coronary infarctions, he stated that from his information of the case, he could not tell that "a particular game of handball or a particular strenuous exertion on the police force in line of duty caused the particular heart condition". It will be remembered that Dr. Smith testified that "people without high blood pressure get heart attacks"; that it was not certain that if claimant had refrained from strenuous physical activity he would have avoided his heart attacks. As stated, there was evidence that claimant had a family history of hypertension and hypertensive heart disease on both sides of his parentage; that personally he suffered from hypertension as far back as 1955; that he then and as late as 1958 or 1959, indulged in active physical exertion such as handball and like sports to a limited extent; that from 1955 he, from time to time, experienced severe chest pains and was frequently under the care of physicians for such affliction and in and out of hospitals for various periods of time for such treatments. He testified that in 1958, he suffered chest pains while walking his beat. In 1959, there was evidence of an old posterior infarction; that scars from heart attacks may form over a period of six weeks or a month; that the exact date it occurred could not be pinpointed.

It is apparent that under such record the evidence is conflicting as to whether claimant's total and permanent incapacity for duty was the natural and proximate result of any accident or event occurring in 1959 while in the discharge of duty as a policeman "at some definite time and place." The Board determined that fact in the negative. Thus the record does not present a situation wherein the Board had no function other than to apply the law to the facts, but the testimony was such as to vest in the Board the prerogative of determining the facts from the conflicting evidence. Hence, upon review the court may not weigh the evi-

**48**

dence and make its own findings of fact, nor substitute its own judgment for that of the administrative agency. Section 536.-140(3).

 Respondent further contends that the alleged accidental occurrences in 1959 were legal causes of claimant's disability, even though claimant had an underlying disease which concurred with such accidents to produce his coronary occlusions. The authorities she cites are all cases under the Workmen's Compensation Statutes, but under that procedure it is ruled that the Compensation Act contemplates latent or dormant ailments and existence of disease which have *not* impaired the employee's ability to work, and will allow recovery if accidental injury arising out of or in the course of his employment, aggravates such existing infirmity "even though the particular accident would have produced no such result in the case of a normal and healthy individual." Cheek v. Durasteel Co., Mo. App., 209 S.W.2d 548; Gegg v. St. Louis Independent Packing Co. et al., Mo.App., 271 S.W.2d 223; Lofton v. Armour & Co., Mo. App., 311 S.W.2d 350. The record in the instant case is replete with evidence of many and frequent instances when claimant's heart condition had intermittently impaired his ability to perform the duties of his employment over a period of several years prior to the alleged accidental disability.

 It appears to us that under the record the sole issue before the circuit court upon review of this case was whether or not under Section 22, Article V, Constitution of Missouri, 1945, V.A.M.S., the Board's decision was authorized by law, was supported by competent and substantial evidence upon the whole record, and whether, under Section 536.140 RSMo 1959, V.A. M.S., the decision was arbitrary or capricious.

 We conclude that the decision of the Board met the above constitutional and statutory requirements. For that reason

we find that the circuit court's judgment, should be reversed and the cause remanded with instructions to enter a judgment affirming the decision of the Board of Trustees. The Special Commissioner so recommends.

PER CURIAM.

The foregoing opinion by DEW, Special Commissioner, is adopted as the opinion of the court.

Accordingly the circuit court's judgment, should be reversed and the cause remanded with instructions to enter a judgment affirming the decision of the Board of Trustees.

RUDDY, P. J., and WOLFE and ANDERSON, JJ., concur.