Before STATE INDUSTRIAL BOARD, Respondent.

JAMES DE SALVO, Claimant, Appellant, *v.* EDWARD S. JENKINS and Another, Respondents.

Third Department, May 2, 1923.

**Workmen's compensation — claimant, night watchman, shot in eye — shot was discharged from air rifle in hands of trespasser who was on premises without hostile intent — injury did not arise out of employment.**

A night watchman does not receive an injury arising out of the employment where it appears that he was shot in the eye with an air rifle which was in the hands of a young man who had entered the premises without authority and not on any business with the employer, but with no hostile intent either against the employer or employee, and that the shooting was purely accidental and took place while the air rifle was being inspected.

HASBROUCK, J., dissents, with opinion.

APPEAL by the claimant, James De Salvo, from a decision of the State Industrial Board, made on or about the 2d day of May, 1922, affirming a decision of the State Industrial Commission, made on the 15th day of September, 1920, disallowing the claim on the ground that claimant's injuries did not arise out of his employment.

*Theodore H. Lord,* for the appellant.

*Walter L. Glenney,* for the respondents.

KILEY, J.:

On October 20, 1919, the claimant worked for the above-named employer as watchman at his Long Island storage house, No. 781–789 Kent avenue, Brooklyn, N. Y.; his wages were twenty-three dollars per week, seven days of the week; he had worked for this employer three years. On the date aforesaid he went on duty at six P. M. and his quitting time was seven A. M. At about nine-thirty P. M. on October twentieth, aforesaid, two boys came into the office; they were under sixteen years of age; one of them, the oldest, had an air gun in which BB shot was used. They had been there about three minutes and were going out when another young man about nineteen years old came in; claimant was sitting down reading a paper. The young fellow asked the boy, who had the gun, what he had and where he got it, and took it in his hands, and pointed it at them; one of the boys said it might be loaded, at which expression the claimant looked aside of or over his paper and was struck by a shot from the gun in his left eye, destroying the sight of that eye. On proceedings duly had claimant was awarded two-thirds of his weekly wage for 128 weeks. (Workmen's Compensation Law, § 15, subd. 3, as amd. by Laws of 1917, chap. 705.)* On a subsequent hearing the award was rescinded by the State Industrial Board and claim dismissed upon the ground that the injury did not arise out of claimant's employment. Section 3, subdivision 7, of the Workmen's Compensation Law (as amd. by Laws of 1917, chap. 705)† defines "injury" and "personal injury" as "only accidental injuries arising out of and in the course of employment and such disease or infection as may naturally and unavoidably result therefrom." A further consideration of the evidence discloses that the young man who fired the shot had some nine months or a year previous to the date of the accident been in the employ of this employer, but at the time of the accident he had no connection with the employer or his business. He was acquainted with the claimant but no friendly relations

---

* Since amd. by Laws of 1920, chaps. 532, 533. Now Workmen's Compensation Law of 1922, § 15, subd. 3.— [REP.

† Now Workmen's Compensation Law of 1922, § 2, subd. 7.— [REP.

existed, and he had not been in the habit of calling at the office when claimant was there. What his business was, if he had any, was not disclosed upon the hearing, except that it does appear that he had no business with claimant. There is nothing in the record by which we can trace this young man's presence in that office to anything connected with the business of the claimant's employer. In *Matter of Scholtzhauer* v. *C. & L. Lunch Co.* (197 App. Div. 916) a white waitress refused to go out in the evening with a colored male co-employee, and stated to another girl, a co-employee, that she would not go out with a negro. He heard of the remark and shot her while in the business place of the employer. Her dependent mother was awarded compensation. This court affirmed the award. On appeal to the Court of Appeals (233 N. Y. 12) the award was reversed and the claim dismissed. Judge McLaughlin said: "To justify the State Industrial Board in making an award, the injury complained of must have arisen both out of and in the course of the employment. It must have been received while the employee was doing the work for which he was employed, and in addition thereto, such injury must be a natural incident to the work. It must be one of the risks connected with the employment, flowing therefrom as a natural consequence and directly connected with the work." The distinction urged by appellant, as to when liability obtains and when it does not, is clearly pointed out in *Matter of Heitz* v. *Ruppert* (218 N. Y. 148). The most that can be said in favor of claimant is that he was in the course of his employment and that if it had not been for such employment he would not have been in the office of his employer, and if he had not been there he would not have suffered the injury in question. All of that was said in the *Scholtzhauer Case* (*supra*). It did not avail. In *Frear* v. *Ells* (200 App. Div. 239) a boy working in a garage spilled some gasoline on his clothes; a policeman who was there to buy oil for his motorcycle saying it could be burned off, touched a match to the garment; the boy was burned so badly that he died. This court sustained an award to his mother. It was held that gasoline on his clothes and the presence of a customer to buy oil were incidents of his employment; such they clearly were. In *Rosmuth* v. *American Radiator Co.* (201 App. Div. 207) a workman in the course of his employment in the night time was drawing cinders to a dump 200 feet from the plant, was robbed and injured while at the dump. It was pay night, a fact well known in the community; this fact, and the lonely place where the dump was located making it more easy to successfully accomplish the robbery, led this court to hold that the exposure to risk was increased to a greater degree than to common humanity in general. It may be

said that this claimant, by reason of his employment, was brought "within the zone of special danger;" but what special danger is contemplated? It must be such as would arise out of that employment and be incidental to it. Such special danger must be predicated upon an invasion of the premises for purposes forbidden by the employer or if otherwise, in connection with the business carried on upon the premises. A call with no purpose disclosed and at least not hostile, is not an increase of hazard and does not create the "special danger" contemplated in the cases thus far decided. The appellant urges that the award once having been made, the State Industrial Board was without jurisdiction to reverse it; that the only remedy open to the respondents here was by way of appeal. That objection has been considered many times and held untenable.

The decision of the State Industrial Board should be affirmed.

H. T. Kellogg, Acting P. J., Van Kirk and Hinman, JJ., concur; Hasbrouck, J., dissents.

Hasbrouck, J. (dissenting):

I dissent.

Whatever the claimant may have been doing, he heard the Fischetti boys and McCarthy talking about a gun and gave his attention to the condition existing and while so doing McCarthy discharged the air gun and put out claimant's eye. An award has been denied the claimant because the injury did not arise out of the claimant's employment. That employment was to watch and patrol the premises, to drive away trespassers and intruders. Clearly upon the evidence McCarthy was a trespasser and an intruder. One of the dangers of the employment was from just such persons. If the gun was discharged for the purpose of injuring the watchman because he was a watchman there could be no doubt that the injury arose out of the employment. There is no evidence to show that the injury was not intentional and there is besides the presumption that the claim lies within the provisions of the Workmen's Compensation Law. (§ 21.)

Being a watchman "For him, in a measure not common to the public generally, there was exposure to the perils that come from contact with the criminal and lawless." (*Matter of Heidemann* v. *American District Tel. Co.*, 230 N. Y. 307.) Being a watchman he was exposed to contact with the trespasser and intruder and the menace which naturally flows therefrom. Claimant was thus brought by the character of his occupation "within the zone of special danger." (*Matter of Leonbruno* v. *Champlain Silk Mills*, 229 N. Y. 472.)

When we consider that the great purpose of the Workmen's Com-

pensation Law was to ameliorate the social condition of the worker; to sustain him in his injury and his dependents in his death arising out of and during the course of his employment; to do away with all questions of negligence and contributory negligence and risk and arbitrarily to cast the burden of recompense upon the industry, the law should have as it has had a broad and liberal interpretation. (*Matter of Verschleiser* v. *Stern & Son*, 229 N. Y. 199; *Rosmuth* v. *American Radiator Co.*, 201 App. Div. 209.)

As Judge CARDOZO said: " The test of liability is the relation of the service to the injury, of the employment to the risk." (*Leonbruno Case, supra.*) Measured by that test we find the claimant in the very act of looking about his master's premises to see what an intruder was doing with an air gun, a dangerous instrument, and while so doing having his eye shot out. The relation of the employment to the risk seems indubitable.

I favor a reversal of the decision of the Industrial Board and the remission of the case to it.

Decision affirmed, without costs.