Bergan, J.
Claimant’s husband, Carlos Ramos, was a taxicab driver in the city of New York. While in the course of this employment he was shot and killed on September 3, 1946, on Manhattan Avenue near 104th Street by Carlos Rodriguez. The Workmen’s Compensation Board has found that the death arose out of the employment as well as in the course of employment, .and the question presented on this appeal is whether there is *102 any substantial evidence to associate the murder with the employment.
Claimant had first been married in 1935. Her husband died in 1940. The following year she met Carlos Rodriguez. The next year she met and married, on November 20, 1942, Carlos Ramos. Rodriguez continuing to press his attentions upon claimant after her marriage, claimant complained to the police. This resulted in the indictment and prosecution of Rodriguez for compulsory prostitution in the General Sessions on April 6, 1943. Upon that criminal prosecution the claimant was the complaining witness against Rodriguez. She had at that time been married less than six months to the deceased.
On the 1943 indictment Rodriguez was convicted and sentenced to Sing Sing Prison. He was released in 1945., By the claimant’s own admissions to the police shown in the compensation hearings and wholly uncontradicted, Rodriguez, after his release from prison upon a conviction based on the claimant’s testimony, said he would kill her and her husband. The record also shows that not long before the husband Ramos was killed by Rodriguez a relative or friend of the claimant, one Medinas, had complained to the Board of Parole about these threats. It was when the police found from parole records that this complaint had been made that they decided to arrest Rodriguez for the murder of Ramos. There is some other uncontradicted evidence pointing to the personal hostility of Rodriguez to the claimant and her husband.
The meeting between Ramos and Rodriguez on the early morning of September 3, 1946, was entirely fortuitous. Rodriguez got into the cab of Ramos with a group of other men near a grill. Recognition between them did not occur until, sometime in the course of the trip. Rodriguez said: “Now we finish it out.” The cab was stopped on Manhattan Avenue. Rodriguez shot Ramos as he was about to get out of the driver’s side of the cab. All the men ran away. Ramos’ body was found near the running board of the cab.
Rodriguez was indicted for murder in the first degree. The trial in General Sessions was in progress during the pendency of the compensation hearings. He was convicted of murder in the second degree. Claimant was a witness against him, it may be assumed on the question of threats, although that is not in this record. The only substantial evidence in this record is that the murder was motivated by reasons personal between assailant and victim. This is uncontradicted. In many, but not alL *103 areas of the testimony, claimant relied on her constitutional privilege and refused to answer.
The theory upon which this award was based is that the shooting of the taxicab driver was a “ street risk ”. This expression was borrowed in New York from the English workmen’s compensation cases. (See opinion of Pound, J., in Matter of Katz v. Kadans & Co., 232 N. Y. 420.)
The significance of this and other English views on workmen’s compensation rested on the fact noted by Lyon, J., in Matter of Mihm v. Hussey (169 App. Div. 742) and again in Matter of De Filippis v. Falkenberg (170 App. Div. 153, affd. 219 N. Y. 581) that the source of the language in section 10 of the Workmen’s Compensation Law, “ arising out of and in the course of the employment ” was the English Workmen’s Compensation Act of 1906 (6 Edw. VII, ch. 58, § 1, subd. 1), as, indeed, the English statute was the source of much of the general concept as well as the language of our own.
But what Judge Pound demonstrated, and what the English cases which the judgment given in his case adopted meant, by a “ street risk ” was the peril peculiar to public ways and places when the street became the place of employment. Revenge of a personal enemy for a cause having no association with employment does not change its nature because the aggressor selects a stre'et or a factory to do violence. This sort of attack has never been regarded in the English cases, or our own, as an industrial accident “ arising out of ” employment.
The fact that the employee here and the claimant in Katz v. Kadans & Co. (supra) were employed to drive vehicles and were injured by an assault in the course of employment on the street does not make that case a good precedent for this one. There the chauffeur was attacked and stabbed by an insane man running wildly on the streets.
That such incidents are risks peculiar to the use of streets became the controlling fact of the decisions which turned upon the exposure that the work invited such incidents. There is no peculiar exposure to a personal enemy in one place more than another if it be assumed access to the victim is possible. Certainly the injury had no association with the employment.
It is commonly held that the conditions of the statute (“ arising out of ” and “ in the course of ” employment) must be treated conjunctively and it must be found that the injury arose out of as well as in the course of employment. (Matter of Heitz v. Ruppert, 218 N. Y. 148.)
*104 There, in a quarrel arising from the subject matter of the employment and in the course of the work, it was held that it could have been found as a fact on that record that the assault and injury arose out of as well as in the course of employment. The doctrine which accords finality to the factual findings of the commission was restated with a very considerable emphasis. (P. 153.)
Sometimes the trouble arises with the other branch of the conjunctive phrase, and the question is whether the accident is in the course of employment. In Matter of Field v. Charmette Knitted Fabric Co. (245 N. Y. 139) a quarrel arose between foreman and worker over the job. After the foreman left the building he was assaulted on the sidewalk, three or four feet from the entrance of the mill. There was, of course, no difficulty in finding that the assault arose from the employment and it was felt that the whole course of events was so continuous that the assault, even on the sidewalk, arose in the course of employment. (See, also, Matter of Collins v. Arobol Mfg. Co., 269 App. Div. 915.)
There is no difficulty here in sustaining that part of the board’s decision which finds the assault was in the course of employment because the employee was shot while actually doing his employer’s work and while in the taxicab. And it has been held by this court that where it is found that the injury was sustained in the course of employment a presumption follows that it arose out of employment in the absence of substantial evidence to the contrary. (Matter of Humphrey v. Tietjen & Steffin Mill Co., 235 App. Div. 470, affd. 261 N. Y. 549.) There the quarrel between coemployees and the shooting were found to have arisen from the employment.
But the presumption upon which that case turned in large part was invoked because it was not factually disputed. (See opinion McNamee, J., pp. 471, 472.) This kind of a presumption does not survive substantial controverting evidence. (Matter of Magna v. Hegemon Harris Co., 258 N. Y. 82, 84.) The only substantial evidence here is, by the admissions of the claimant herself and from other proof, that the assailant was motivated solely by personal hatred having nothing to do with the employment and the fact that the assault occurred in the course of employment was a coincidence. It could not be found on the record here that the assault “ arose out of ” the employment and there is no proof that it did, the presumption having been met by substantial and undisputed evidence.
*105 A long line of cases of assaults made while in the course of employment have rested upon and have been a part of the development of the presumption, but they are not a safe guide for a case where there is clear evidence that the assault arose from a cause not associated with employment.
A good example of the circumstances in which the presumption may be relied on is Matter of Salamon v. Continental Blade Corp. (248 App. Div. 928), where a salesman was assaulted by unknown persons where he was calling on a customer. Another is Matter of Weinberg v. Eagle Clothes (243 App. Div. 826, affd. 268 N. Y. 511) where the employee, proceeding to get a car to be used in employer’s business, was assaulted by unknown men.
In more debatable circumstances the presumption was relied on to sustain a finding that the claimant was not the aggressor in a fight between employees at the place of employment in Matter of Boyle v. Yellow Taxi Corp. (235 App. Div. 877, affd. 260 N. Y. 575). Sometimes the assault by the third person is regarded as sufficiently related in its causation to the employment itself to be compensable. (See Matter of Wakefield v. World-Telegram, 274 N. Y. 517, and Matter of Ruggles v. Ellen & Jefferys, 249 App. Div. 897.)
There has been an interesting evolution in the view taken of injuries arising from sportive play and arguments between fellow workers during employment. The earlier rule was that injuries thus incurred did not6 ‘ arise out of ’ ’ the employment. A classic example is Matter of De Filippis v. Falkenberg (170 App. Div. 153, supra), decided in 1915, where an injury to an employee caused by a scissors thrust through a partition by a fellow employee as a practical joke was held not compensable, reliance being placed on a long line of English cases.
This might be compared with Matter of Industrial Comr. (Siguin) v. McCarthy (295 N. Y. 443), decided in 1946, over thirty years later. There a fatal injury arising from friendly horseplay was held to be compensable.
The direction of this evolution, its guidance and its articulation, were largely fashioned by the expression of Oaedozo, J., in Matter of Leonbruno v. Champlain Silk Mills (229 N. Y. 470 [1920]). Recognition was given, and impressed into judicial decisions, of the reality that it is to be expected as an integral incident to industrial work that there will be both fights and horseplay. (P. 473.) In the same current, decided by the court a few months earlier and reported in the same volume, was Matter of Verschleiser v. Stern & Son (229 N. Y. 192).
*106 Examples of the development of the concept in this court are the argument over prior performance of work in Burke v. Towner Bros. (203 App. Div. 384 [1922]); the argument between taximen over being a “ chiseler ” in Matter of Grossberg v. H. & H. Taxi Corp. (250 App. Div. 804 [1937]); the rough horseplay in Matter of Levy v. World-Telegram (255 App. Div. 237 [1938]); the fight between boys to obtain il dominance and respect within the ranks of their fellow employees ” in Matter of Chanin v. Western Union Tel. Co. (271 App. Div. 763 [1946]); and the “ fooling around ” by boys with loaded revolvers in Matter of Long v. Franklin Ry. Supply Co. (272 App. Div. 988 [1947]).
Where the employer may be expected, reasonably, to foresee danger to the employee from attacks by strangers in the place he sends him to work and under the conditions of his work, there is coverage. Thus, an injury to an employee by robbers while he was working late at night at a dump some distance from a plant after he had received his pay was held to have arisen out of the employment on the ground the method and time of payment and the circumstances of the work were known to the employer and there was a special exposure which could have been foreseen to the common peril of robbery. (Rosmuth v. American Radiator Co., 201 App. Div. 207 [1922].)
The following year, however, it was held that a night watchman shot in the eye accidentally by a boy (not a fellow employee) in the employer’s premises, without hostile intent, did not arise out of employment (Matter of De Salvo v. Jenkins, 205 App. Div. 198, affd. 239 N. Y. 531 [1923]).
No doubt the leading authority on the circumstances when an assault does not arise out of employment is Matter of Scholtzhauer v. C. & L. Lunch Co. (233 N. Y. 12 [1922]). There a white waitress in a restaurant had been invited to go out by a fellow employee, a Negro dishwasher. She refused, and stated to another employee that she would not go out with a Negro, which was repeated to the dishwasher.
When the waitress later brought some dishes to be washed, she was shot and killed by the dishwasher. It was held that the death arose in the course of, but not “ out of the employment ”, (P. 15.) The force of this decision has never been weakened.
Three years later it was held in Matter of Schlener v. American News Co. (240 N. Y. 622) on the dissenting opinion of Van Kirk, J. (210 App. Div. 511) that a demand- by an intoxicated fellow worker, who was off duty, for a loan, the *107 refusal of which resulted in an assault with a knife, did not arise out of the employment. In 1928, it was decided, in a somewhat more debatable case, that a woman who was assaulted by a stranger while going to the ladies room which was located outside of the employer’s premises was not a case for compensation because it did not arise out of employment (Matter of Aierlo v. Haft, 247 N. Y. 602).
The farthest frontier to which an allowance of compensation has been carried for an assault committed by a third person is Matter of Berresi v. Ryan (242 App. Div. 279 [1934]). There, the employee was a chauffeur. Antonio Romeo was his personal enemy. The employer knew of the enmity, but sent the chauffeur with a load of grain to Romeo’s premises, where the employee was shot and killed. It was held, solely because of the knowledge of the employer of the enmity, that the employer had sent the employee into a “ situation of special hazard and danger ”. The court was careful to emphasize that without this special knowledge by the employer of a special danger, the usual rule would prevail. (P. 280.) Hefferftaft, J., dissented on the ground the assault did not arise out of the employment.
The marked trend of liberalization in workmen’s compensation cases has not obliterated the dual test that it be shown both that the injury arose “ out of ” as well as “in the course of ” employment, .and the latest cases are as careful to require both conditions to exist as the earliest ones. (Cf. Matter of Industrial Comr. [Siguin] v. McCarthy, 295 N. Y. 443, 446-447, supra.)
The employment brought the deceased face to face with his enemy, and there is no difficulty in saying that this murder arose “ in the course of ” employment; but it cannot be said, and the board had no evidence upon which to erect a finding, that the murder arose “ out of ” the employment. All the evidence in the case demonstrates that the deceased was murdered for a personal cause having no relation to employment.
To say that the mortal enmity Rodriguez had for Ramos had the slightest connection with any conceivable work as a taxi-driver would do great violence to the language of the statute in its concept, its development through a rather consistent pattern of judicial construction, and the public purpose underlying both statute and its construction. It would require distortion to find that personal revenge for private reasons is an industrial risk under this statute as written and as it has been construed.
*108 The award should be reversed and the claim dismissed, with costs to the appellant against the Workmen’s Compensation Board.