Mrs. W. R. (Rosa) MAY (Claimant), Respondent,

v.

OZARK CENTRAL TELEPHONE COMPANY (Employer) and Utilities Insurance Company (Insurer), Appellants.

No. 28956.

St. Louis Court of Appeals.

Missouri.

Nov. 16, 1954.

Dearing &. Matthes, and M. C. Matthes, Hillsboro, for appellants.

Mosby & Mosby, Jos. W. Mosby, Linn, and John P. Peters, Linn, for respondent.

HOLMAN, Special Judge.

In this proceeding, which originated before the Industrial Commission, the claimant (respondent), Rosa May, seeks to recover compensation for the death of her husband, William R. May. It is undisputed that he was instantly killed as the result of the discharge of a shotgun, while engaged in clearing brush and trees from a strip of land over which the alleged employer, Ozark Central Telephone Company (appellant), proposed to construct a telephone line.

A hearing was had before a referee of the Industrial Commission who entered an award denying compensation. This award was based upon his finding that the death of the alleged employee, "was not the result of an accident arising out of and in the course of the employment within the meaning of the Missouri Workmen's Compensation Law [Section 287.010 et seq. RSMo 1949, V.A.M.S.]."

Upon application of Mrs. May the award was reviewed by the Industrial Commission and it made a final award affirming the award of the referee denying compensation but based its ruling upon a finding that the deceased, "was not an employee of Ozark Central Telephone Company within the meaning of the Missouri Workmen's Compensation Law. The Commission, therefore, is without jurisdiction in this cause."

In due time the cause was appealed to the Circuit Court of Osage County, Mis-

souri, which court, after considering the transcript and the argument of counsel, found that there was not sufficient competent evidence in the record to warrant the making of said award in favor of the employer-insurer and the award was accordingly reversed and the cause remanded to the Commission for further proceedings.

The employer and insurer have duly appealed from the judgment of the Circuit Court and the cause is now before this court for our review. We have jurisdiction of the appeal, since it appears that in the event compensation should be allowed the amount thereof would not exceed $7,500.

It appears from the evidence that in the summer of 1950 the Ozark Central Telephone Company entered into a verbal contract with Moses Helton to cut the brush and trees from a right of way along the east side of Highway Number 133 from Meta to Folk, Missouri. The right of way, over which the alleged employer intended to construct a new telephone line, was to be 12 feet wide and about six miles long. Helton was to receive $50 per mile for this work and without detailing the facts we may observe that it is apparent that he was an independent contractor. Before the work was commenced Mr. Helton entered into a verbal contract with the deceased whereby it was agreed that he would help with this work and would receive one-half of the money paid by the company to Helton. They started to work during the last part of July and on September 18, 1950, Mr. May was shot and killed.

At the time this tragedy occurred the men were working upon the land of Fred Woehr. The Telephone Company had obtained verbal permission from Mr. Woehr to cut this right of way but no written agreement or easement had been executed. At the point in question a small portion of the strip was on the right of way of the State Highway and the remainder was just inside the fence on the land of Woehr. At the time the fatal shot was fired May was engaged in trimming the limbs from a tree they had just sawed down. At that time Helton was sitting on a stump 75 feet away and was sharpening a cross cut saw. Upon hearing the shot he immediately ran down to where May was and found that he was dead.

The pellets from the gun were described as number two shot. These are rather large shot generally used in hunting geese and sometimes in shooting foxes and wolves. The charge struck deceased on the left side of the head. Witnesses estimated that the gun was discharged at a distance of from 75 to 100 feet away. It was close enough that Helton first thought that Mr. May had shot himself. To the north of the point where deceased was working the brush was quite heavy so that a person could creep up close to him without much danger of detection. There was evidence that there was some hunting in this area during all seasons of the year although no witness had seen a hunter or heard any shots on this particular day.

It appears clear that Mr. May had feared for his life for several months before his death. A number of witnesses testified that he appeared worried and afraid. On one occasion in June, 1950, a car drove into the driveway at the May home about 9 p. m. and five shots were fired in rapid succession before the car sped away. Thereafter, a car often drove into his driveway at night and particularly on every other Friday night. Mr. May appealed to a friend, Claude Howard, to help him. They complained to the sheriff of Maries County who brought a deputy to the May home on one Friday night and the four men stood guard until 1 a. m. hoping to apprehend the person causing this disturbance. They were unsuccessful.

As a result of these events deceased became so afraid that he moved his bed away from the window and during the hot months of July and August slept with the windows down and the shades drawn. He told his wife he wouldn't sleep near the window because he didn't want a .38 through his head. There is some evidence to indicate that before his marriage to claimant Mr. May had run around with a

married woman and that her husband had made threats to "get" him. However, this person was investigated by the officers after the killing and he was able to establish a personal alibi. No one was ever arrested or charged with the killing of May and at the time of the hearing the case remained unsolved.

■ In a workmen's compensation case the scope of review is limited. The circuit court and this court are governed by the same rules in undertaking to review an award of the Industrial Commission. We cannot substitute our judgment on the evidence for that of the Commission. We are, however, authorized to determine whether the Commission, upon consideration of all the evidence before it, could have reasonably made its findings and reached the result indicated. Furthermore, if we conclude that the decision is clearly contrary to the overwhelming weight of the evidence, it is our duty to set it aside. Sections 536.140 and 287.490 RSMo 1949, V.A. M.S.; Wood v. Wagner Electric Corp., 355 Mo. 670, 197 S.W.2d 647; Cebak v. John Nooter Boiler Works Co., Mo.App., 258 S.W.2d 262.

. The appellants contend that the circuit court should have affirmed the award denying compensation because, (1) the death of deceased did not result from an accident arising out of and in the course of his employment and (2) that May was not an employee of the Telephone Company within the meaning of the Compensation Law. The first ground mentioned is in accord with the finding of the referee and the latter conforms with the view of the Industrial Commission.

■ The question as to whether an injury or death results from an accident arising out of and in the course of the employment is ordinarily considered a mixed question of law and fact. However, if there is no dispute about the facts it becomes a question of law only. Every case involving this problem must be decided upon its own facts and circumstances as shown by the evidence and not by reference to some exact formula. Finley v. St. Louis Smelting & Refining Co., 361 Mo. 142, 233 S.W.2d 725. The applicable rule of law was quoted by this court in McFarland v. St. Louis Car Co., Mo.App., 262 S.W.2d 344, 346, as follows, " 'an injury is received "in the course of" the employment when it comes while the workman is doing the duty which he is employed to perform. It arises "out of" the employment, when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury.' McNicol's Case, 215 Mass. 497, 102 N.E. 697, L.R.A.1916A, 306."

■ In the instant case it is obvious that the fatal injury was received while the deceased was engaged in work being performed "in the course of" his employment since he was doing the work he was engaged to perform. We have concluded, however, that the death of Mr. May did not arise "out of" his employment. We do not think anyone could read the evidence in this record and reasonably reach any other conclusion than that the deceased was murdered. It is also apparent that his assailant was motivated by personal reasons in no way connected with or pertaining to the employment. If the Industrial Commission had considered this issue and made findings contrary to those we have expressed herein they would have been against the overwhelming weight of the evidence and it would have been our duty to set aside any award based thereon.

■ Since we have concluded that deceased was intentionally killed by an individual who was acting upon personal motives unconnected with the employment it necessarily follows that his death is not compensable. Foster v. Aines Farm Dairy Co., Mo.Sup., 263 S.W.2d 421; Lardge v. Concrete Products Mfg. Co., Mo.Sup., 251 S.W.2d 49.

■ The Claimant attempted to prove that the death of her husband resulted from his being accidentally struck by a charge

fired from a hunter's gun. Even if we should assume that she established this fact it would not permit an award of compensation. Whether deceased was murdered or accidentally shot would make no substantial difference in the basic rules of law that should be applied or in the ultimate result. If Mr. May was accidentally killed by a hunter there can be no recovery unless it is also shown that the work being done exposed him to an unusual risk of being shot in this manner. There was no evidence that would permit such a finding. None of the witnesses appeared to know of a single instance where a person had been shot by a hunter while doing this type of work. The deceased was certainly in no greater danger than others who might be upon the farms in that area or traveling upon the roadway. In the absence of a showing of unusual risk, claimant was required to prove that the shooting of her husband grew out of or had some direct relation to the details of the work he was doing. No evidence in the record tends to establish this fact and we must therefore conclude that there was no causal connection between the death of Mr. May and the employment. Our conclusion is supported by the following cases, in each of which the employee had been accidentally shot and was denied compensation because there was no causal relation between the work being performed and the injury. Long v. Schultz Shoe Co., Mo.App., 257 S.W.2d 211; Spiller v. Industrial Commission, 331 Ill. 401, 163 N.E. 406, 60 A.L.R. 1397; De Salvo v. Jenkins, 205 App.Div. 198, 199 N. Y.S. 843; Lebeda v. Pongracz, 230 App. Div. 606, 246 N.Y.S. 293; Whitley v. North Carolina State Highway Commission, 201 N.C. 539, 160 S.E. 827; Associated Indemnity Corp. v. Industrial Accident Comm., 43 Cal.App.2d 292, 110 P.2d 676.

■ Claimant vigorously argues that we cannot consider the issue as to whether the death of Mr. May resulted from an accident arising "out of" his employment because the Industrial Commission made no finding upon this question. It is obvious that the Commission concluded that deceased was not a statutory employee of the Telephone Company and it therefore saw no necessity of going further and determining the other issue which the referee had found was decisive of the case. We agree that it is the duty of the Commission to make findings of fact and rulings of law in the first instance and that ordinarily the courts are limited to a review of these findings under the rules heretofore stated. If we considered it advisable to base our decision solely upon this point and if, under the evidence, this issue could be found either way we would deem it our duty to cause the case to be remanded to the Commission with instructions to make a finding upon the same. However, the law never requires the doing of a useless act. We have already indicated that under any view that might be taken of the evidence in this record the only finding of ultimate fact that could be permitted to stand would be that the death heretofore described did not result from an accident arising "out of" the employment. In this situation it necessarily follows that it is our duty to rule as a matter of law that the widow is not entitled to recover compensation for the death of Mr. May and it would serve no useful purpose to prolong this litigation by remanding the cause in order to give the Commission an opportunity to make findings upon this question.

In view of the fact that our ruling on the first issue considered is decisive of the case we see no need of extending this opinion in order to determine the question as to whether the deceased was a statutory employee within the meaning of Section 287.040 (1) RSMo 1949, V.A.M.S.

The judgment of the Circuit Court is reversed and the cause remanded with directions to enter a new judgment affirming the award of the Industrial Commission.

RUDDY, Acting P. J., and BENNICK, J., concur.