Clyde GREGORY, Plaintiff-Appellant,

v.

LEWIS SALES COMPANY and Travelers Insurance Company, Defendants-Respondents.

No. 7925.

Springfield Court of Appeals.

Missouri.

Aug. 8, 1961.

Motions for Rehearing or to Transfer Overruled Aug. 30, 1961.

---

Robert A. Dempster, Sikeston, for plaintiff-appellant.

Evans & Dixon, Edward W. Warner, St. Louis, for defendants-respondents.

STONE, Presiding Judge.

Pointedly put, this is a tailbone case. As claimant, a 30-year old furniture and

household appliance salesman for Lewis Sales Company, started to sit down at a desk in his employer's store at Sikeston, Missouri, to write a receipt to a customer, "a little boy came in and pulled the chair out from under me (claimant) and I hit a hard concrete floor." For injuries alleged to have resulted, claimant instituted this proceeding under the Missouri Workmen's Compensation Law, in which he has suffered a series of falls (perhaps no less painful, figuratively speaking, than the indignity inflicted by the "little boy") at the hands of the referee in the first instance and thereafter the Industrial Commission of Missouri on review, both of whom denied benefits because claimant's accident did not arise "out of * * * his employment" [V.A.M.S. § 287.120, subd. 1], and upon judicial review in the circuit court where the final award of the Industrial Commission was affirmed. Still complaining, claimant has appealed to us.

Claimant was the only lay witness and his testimony concerning the accident itself was brief. The "little boy," from whose intended act unintended consequences have flowed, is identified only as a "paper boy" for the local Sikeston newspaper. Although claimant had noticed this boy enter the front door, he (claimant) had not observed where the boy went inside the store and had no idea that he was nearby until, after claimant had fallen to the floor, he saw that the boy "had the chair in his hand and was standing behind me (claimant) * * * laughing." Claimant knew the boy "just by name and * who he was." The boy had never "played any kind of trick" on claimant previously, and neither claimant nor the boy theretofore had engaged in any "horseplay" with the other.

■ The employer and the insurer frankly concede that instant claimant's injury arose *in the course of* his employment, i. e.; that it occurred within the period of employment, at a place where claimant reasonably might have been, and while he was engaged in performing the duties of his employment; but, they insist that (as both the referee and the Industrial Commission found) such injury did not arise *out of* claimant's employment. The phrases "out of" and "in the course of" the employment are not synonymous and proof of one does not necessarily establish the other. Sweeny v. Sweeny Tire Stores Co., 227 Mo.App. 93, 97, 49 S.W.2d 205, 206–207(2). Stated generally, "out of" refers to the origin or cause of the injury, while "in the course of" refers to the time when, the place where, and the circumstances under which the injury was received. Hacker v. City of Potosi, Mo.App., 340 S.W.2d 166, 170(4); Pearce v. Modern Sand & Gravel Co., 231 Mo.App. 823, 99 S.W.2d 850, 854; Metting v. Lehr Const. Co., 225 Mo.App. 1152, 32 S.W.2d 121, 123; Jackson v. Euclid-Pine Inv. Co., 223 Mo.App. 805, 22 S.W.2d 849, 851.

■ Perhaps the most frequently repeated definitive statement concerning "out of" the employment is that an injury so arises when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. See Heaton v. Ferrell, Mo. App., 325 S.W.2d 800, 803–804, and the numerous cases collected in footnote 1. Several of the cases include the alternative statement that, "(i)n other words, an injury arises out of the employment *if it is a natural and reasonable incident thereof,* even though not foreseen or anticipated" [Smith v. Levis-Zukoski Mercantile Co., 223 Mo.App. 743, 14 S.W.2d 470, 472; Conklin v. Kansas City Public Service Co., 226 Mo.App. 309, 41 S.W.2d 608, 613; Buckner v. Quick Seal, Inc., 233 Mo.App. 273, 118 S.W.2d 100, 109; Hacker v. City of Potosi, supra, 340 S.W.2d loc. cit. 169— see also Price v. Kansas City Public Service Co., Mo.App., 42 S.W.2d 51, 54; Sweeny v. Sweeny Tire Stores Co., supra, 49 S.W.2d loc. cit. 207]; but all of these and many others add the qualifying admonition that, to arise out of the employment, an injury must have been *a rational*

*consequence of some hazard connected therewith.* Heaton v. Ferrell, supra, 325 S.W.2d loc. cit. 804(4), and cases cited in footnote 3; King v. City of Clinton, Mo. App., 343 S.W.2d 185, 188(5); Jackson v. Euclid-Pine Inv. Co., supra, 22 S.W.2d loc. cit. 851. (All emphasis herein is ours.)

█ Although a malicious purpose to inflict injury is not imputed to the "little boy," his act was an intentional one designed and calculated to cause claimant to miss the chair and go to the floor, so all interested counsel have, from the inception of this proceeding, treated it as analogous to, and as to be ruled upon the principles controlling in, what may be termed "assault cases."[1] Our review should be and is upon the same theory. See authorities collected in 2A Missouri Digest, Appeal and Error, It has been well said that "the concept of what may properly constitute risks of the employment has gradually broadened to the point where it now may include those risks which arise out of the conditions under which the employment is carried on, *so long as the risks are of such a character as to be reasonably regarded as inherent in the particular conditions in the light of human understanding and experience.*" Long v. Schultz Shoe Co., Mo.App., 257 S.W.2d 211, 213. "The injury may be by accident arising out of and in the course of the employment, whether the risk be an ordinary or extraordinary one, *so long as it bears a relation to the employment;*

whether it originates from within or outside of the employment, *if the exposure to such risk is peculiar to the employment * * *"* [Hacker v. City of Potosi, supra, 340 S.W.2d loc. cit. 170(5)]; or, in other words, "if the assault arose out of and in the course of the employment *as a result of the peculiar nature of the employment and the particular work (the injured) employee * was engaged to do,* then compensation should be awarded." Pearce v. Modern Sand & Gravel Co., supra, 99 S.W.2d loc. cit. 853(3).

On the other hand, " 'when the assault is unconnected with the employment, or is for reasons personal to the assailant and the one assaulted, or is not because the relation of employer and employee exists, and the employment is not the cause, though it may be the occasion, of the wrongful act, and may give a convenient opportunity for its execution, it is ordinarily held that the injury does not arise out of the employment.' " Foster v. Aines Farm Dairy Co., Mo., 263 S.W.2d 421, 428 (12); 58 Am.Jur., Workmen's Compensation, § 265, loc. cit. 266. See Toole v. Bechtel Corp., Mo., 291 S.W.2d 874; Lardge v. Concrete Products Mfg. Co., Mo., 251 S.W.2d 49; Long v. Schultz Shoe Co., supra, 257 S.W.2d loc. cit. 212; Ries v. DeBord Plumbing Co., Mo.App., 186 S.W.2d 488. And, in a wide variety of factual situations, our courts have reminded that " 'it is necessary to bear in mind the fundamental difference between those

---

1. Claimant's counsel has not invoked the so-called "horseplay doctrine" which, as stated and applied in Missouri cases, has permitted awards for injuries sustained by involuntary or non-participating victims [Hager v. Pulitzer Pub. Co., Mo. App., 17 S.W.2d 578; Thompson v. Otis Elevator Co., Mo.App., 324 S.W.2d 755, 757(3)] of horseplay *by fellow-employees.* Blaine v. Huttig Sash & Door Co., 232 Mo.App. 870, 881, 105 S.W.2d 946, 953(6, 7); Tabor v. Midland Flour Milling Co., 237 Mo.App. 392, 397, 398, 168 S.W.2d 458, 460(3), 461(7). See also Gillmore v. Ring Const. Co., 227 Mo.App. 1217, 61 S.W.2d 764. The rationale of the "horseplay doctrine" is that the well-

nigh universal human craving for fun, which leads to practical joking and rough play, finds special opportunity for expression *in the gathering of men in common employment* in a factory, a store or an office, and that *the danger of injury from horseplay in these circumstances is reasonably to be expected and becomes a special risk of the employment.* Blaine v. Huttig Sash & Door Co., supra, 232 Mo.App. loc. cit. 882, 105 S.W.2d loc. cit. 953; Ries v. DeBord Plumbing Co., Mo.App., 186 S.W.2d 488, 491; Long v. Schultz Shoe Co., Mo.App., 257 S.W.2d 211, 213; Leonbruno v. Champlain Silk Mills, 229 N.Y. 470, 128 N.E. 711, 13 A.L.R. 522 (per Cardozo, J.).

causative agencies which are part and parcel of the master's business and under his control, and those which lie outside that business and beyond his control. In the former class of cases, it is quite reasonable to hold the master liable, no matter how unusual or unpreventable the accident may be. But, in the latter class of cases it seems unjust to hold the employer liable, *unless the employment in some way exposes the employee to an unusual risk or injury from such agency which is not shared by the general public.*" Finley v. St. Louis Smelting & Refining Co., 361 Mo. 142, 147–148, 233 S.W.2d 725, 728; Culberson v. Daniel Hamm Drayage Co., Mo., 286 S.W.2d 813, 816; Ries v. DeBord Plumbing Co., supra, 186 S.W.2d loc. cit. 489; Carriker v. Lindsey, Mo.App., 313 S.W.2d 43, 46. See also Scherr v. Siding & Roofing Sales Co., Mo.App., 305 S.W.2d 62, 64–65.

Counsel for instant claimant cites only two Missouri cases, namely, Reed v. Sensenbaugh, 229 Mo.App. 883, 86 S.W.2d 388, and Buckner v. Quick Seal, Inc., 223 Mo.App. 273, 118 S.W.2d 100, both of which are discussed in Ries v. DeBord Plumbing Co., supra, 186 S.W.2d loc. cit. 490. As there pointed out, the award in the Reed case "was based on the theory that there was evidence to show (the employee) was exposed to *a hazard connected with his employment not common to the general public*" in that the employee, being required by his employment to work at night in a garage used by police officers to store automobiles taken in performance of their duties, thus was subjected to *"a special risk of assault peculiar to the employment"* [186 S.W.2d loc. cit. 490]; and the award in the Buckner case was predicated upon the so-called "street-risk doctrine" [i. e., "that street or highway injuries to employees such as travelling men * * *, whose duties increase their exposure to the hazards of the street, arise out of the employment, although the nature of the risk (as distinguished from the degree) is not peculiar to the employment"

(1 Larson on Workmen's Compensation, § 9.00, p. 73)]—a doctrine obviously without application here.

The basic and determinative issues in this proceeding (as framed in borrowed terminology hereinbefore quoted) have been and remain (1) whether the indignity suffered by claimant at the hands of the chair-pulling newsboy was "a natural and reasonable incident" of claimant's employment, "a rational consequence of some hazard connected therewith," or a risk of such character "as to be reasonably regarded as inherent in the particular conditions (of the employment) in the light of human understanding and experience," and (2) whether claimant's exposure to the risk of suffering such indignity was "peculiar to the employment" or enhanced thereby. Emphasizing that the causative agency, namely, the "little boy," was not a "part and parcel of the master's business and under his control" but lay "outside that business and beyond his control" [Ries v. DeBord Plumbing Co., supra, 186 S.W.2d loc. cit. 489], the Industrial Commission found the stated issues in the negative. On judicial review, the inquiry is *not* whether a contrary conclusion might have been permissible [Barton v. Western Fireproofing Co., Mo.App., 326 S.W.2d 344, 349(5), and cases cited in footnote 3] but whether, upon the entire record, the Industrial Commission reasonably could have made the findings and award under consideration. Unless those findings and award are clearly contrary to the overwhelming weight of the evidence and the legitimate inferences fairly and reasonably deducible therefrom, we are not authorized to interfere. Heaton v. Ferrell, supra, 325 S.W.2d loc. cit. 802(1), and cases there cited. And, the statutory injunction that the Act "shall be liberally construed with a view to the public welfare" [V.A.M.S. § 287.800], upon which instant claimant leans heavily, neither impinges upon the function and right of the Industrial Commission, as trier of the facts, to draw from the evidence such inferences as may be

fairly and reasonably permissible [Barton v. Western Fireproofing Co., supra, 326 S.W.2d loc. cit. 349(6); Staten v. Long-Turner Const. Co., Mo.App., 185 S.W.2d 375, 381(13)] nor authorizes allowance of a claim lacking an essential element required by law. Hogue v. Wurdack, Mo. App., 298 S.W.2d 492, 500(20).

■ With these principles in mind and the holdings in the above-cited cases before us, we think it clear that the circuit court did not err in affirming the final award of the Industrial Commission denying compensation. Respondents' motion to dismiss the appeal for the alleged failure of appellant's brief to comply with Rule 83.05, V.A.M.R., is overruled, and the judgment of the circuit court is affirmed.

McDOWELL, J., and HUNTER, Special Judge, concur.

RUARK, J., not participating.