William G. **LIEBMAN**, Employee, (Plaintiff) Respondent,

v.

**COLONIAL BAKING COMPANY**, Employer, and Royal Indemnity Company, Insurer, (Defendants) Appellants.

No. 31785.

St. Louis Court of Appeals.

Missouri.

May 18, 1965.

Rehearing Denied June 21, 1965.

Albert I. Graff, Malcolm I. Frank, St. Louis, for appellants.

George R. Gerhard, St. Louis, for employee-respondent.

L. F. COTTEY, Special Judge.

We have before us a claim for workmen's compensation which has been denied by the Industrial Commission on the theory that the accident is governed by the "assault doctrine," but which the Circuit Court of the City of St. Louis has allowed, on appeal, by applying the "street hazard doctrine." To resolve that conflict it will be necessary to examine both of the doctrines that contributed to it, and, as occasion demands, to explain the purpose and define the proper elements of each. The facts are deceptively simple, but the subject they introduce has not infrequently proven to be so controversial in precept and so contradictory in example as "to perplex and dash maturest counsels."

■ Respondent was employed by a wholesale baking company. His duties required him to make deliveries of the company's products by truck to various retail outlets in St. Louis. About noon one day he parked his truck near the market of a regular customer, walked across the sidewalk to deliver an order of bread, and, as he approached the door, was assaulted from behind by a drunken stranger without motive or provocation. The facts are undisputed and so present a question of law only. May v. Ozark Central Telephone Co., Mo. App., 272 S.W.2d 845, 848. It is conceded that the incident occurred "in the course of" respondent's employment; the question is whether it arose "out of" the employment, as our statute with equal emphasis requires. Sec. 287.120, V.A.M.S.; Williams v. Great Atlantic & Pacific Tea Co., Mo.App., 332 S.W.2d 296, 298.

■ The familiar rule is that an accident will be held to have arisen "out of" the employment when, from a consideration of all the relevant circumstances, it appears that there was a direct causal connection between the employment and the injury (attributable either to the nature of the employee's duties or to the conditions under which he was required to perform them) so that the accident can fairly be said to

have been a rational consequence of some hazard connected with (or aggravated by) the employment. Toole v. Bechtel Corporation, Mo., 291 S.W.2d 874, 879; Gregory v. Lewis Sales Co., Mo.App., 348 S.W.2d 743, 745–6; Scherr v. Siding & Roofing Sales Co., Mo.App., 305 S.W.2d 62, 65; Long v. Schultz Shoe Co., Mo.App., 257 S.W.2d 211, 212; May v. Ozark Central Telephone Co., supra, 272 S.W.2d 849. That is the cardinal requirement for compensability in all cases in Missouri, no matter how or where the accident may have occurred and no matter in what category the causative risk may be classified. Its basic factors are "causal connection" and "rational consequence." When they are shown to exist, the test has been satisfied; otherwise, it has not.

■ Accidents sometimes happen, however, under unusual and confusing circumstances that tend to obscure or divert attention from the essential elements of the test. In such cases a decision as to whether the requirement has been met is always difficult and often doubtful. A special doctrine is simply a method or rule by which the factors of causal connection and rational consequence may be searched out and assigned their proper value in cases involving those more unusual and confusing circumstances; to the end that the facts peculiar to each may be more regularly analyzed by the test that is common to all. Such a doctrine, if it is to serve that purpose usefully, should be as definite in scope, as logical in method and as dependable in result as the inexact nature of the science will allow. It is not the function of a special doctrine to resolve the question as to whether the accident arose "in the course of" the victim's employment. That is a preliminary test to be satisfied before there is any necessity for invoking the doctrine in aid of a final decision; implicit in its use is the assumption that that prerequisite finding has been made. In the ordinary case of an accident resulting directly from some act the employee is doing at the time, there will be no need to resort to the doctrine to establish compensability. But where it is claimed, as

in the case at hand, that the incident has been produced by some hazard existing in the working environment, the chain of causal connection is lengthened, the relevant considerations are more diverse and complex, and the relationship of the accident to the employment is understandably more tenuous and obscure. It is in this type of case that a special doctrine most readily demonstrates its usefulness—and most commonly reveals its faults.

Those observations, made hopefully with the view of giving direction to the discussion, bring us now to the cases which confirm them, by implication or expression.

The assault doctrine has been fully developed in Missouri. It is possible to illustrate its scope and method by examples remarkably free of the contradictions that have attended its use in some other jurisdictions. Assaults divide conveniently into three classes. Larson's Workmen's Compensation Law, Sec. 7, p. 48 et seq.; Sec. 11, p. 131 et seq.; Kelly v. Sohio Chemical Co., Mo.App., 383 S.W.2d 146, 147.

**1st:** Those which are invited by the dangerous nature of the employee's duties, or by the dangerous environment in which he is required to perform them, or are the outgrowth of frictions generated by the work itself, but which, in either event, are invariably revealed to be the result of some risk directly attributable to the employment. Injuries resulting from assaults of that character are compensable in Missouri. Typical examples may be found in Hacker v. City of Potosi, Mo., 351 S.W.2d 760, where a policeman was shot while investigating a traffic violation, and in Macalik v. Planter's Realty Co., Mo.App., 144 S.W. 2d 158, where a foreman was murdered in retaliation for having fired the assailant's son. See also, Reed v. Sensenbaugh, 229 Mo.App. 883, 86 S.W.2d 388; Carlton v. Henwood, 232 Mo.App. 165, 115 S.W.2d 172; O'Dell v. Lost Trail, Inc., 339 Mo. 1108, 100 S.W.2d 289; Kaiser v. Reardon Co., 355 Mo. 157, 195 S.W.2d 477; Stephens v. Spuck Iron & Foundry Co., 358 Mo. 372,

214 S.W.2d 534; Pearce v. Modern Sand & Gravel Co., 231 Mo.App. 823, 99 S.W.2d 850; Keithley v. Stone & Webster Engineering Corp., 226 Mo.App. 1122, 49 S.W.2d 296; and Daugherty v. City of Monett, 238 Mo.App. 924, 192 S.W.2d 51.

**2nd:** Those committed in the course of private quarrels that are purely personal to the participants. Injuries resulting from assaults of that character are non-compensable in Missouri. Typical examples may be found in Lardge v. Concrete Products Mfg. Co., Mo., 251 S.W.2d 49, where the employee was struck in retaliation for his charge that the assailant had stolen his wine, and in Foster v. Aines Farm Dairy Co., Mo., 263 S.W.2d 421, where the fatal quarrel was triggered by the participants' community of interest in the victim's wife. See also, Toole v. Bechtel Corp., Mo., 291 S.W.2d 874, and Staten v. Long-Turner Const. Co., Mo.App., 185 S.W.2d 375.

**3rd:** Irrational, unexplained or accidental assaults of so-called "neutral" origin, which, although they occur "in the course of" the victim's employment, cannot be attributed to it on any more rational basis than that the employment afforded a convenient occasion for the attack to take place. In some jurisdictions that circumstance is regarded as a sufficient reason for awarding compensation; but not in Missouri. Examples may be found in Ries v. De Bord Plumbing Co., Mo.App., 186 S.W. 2d 488, where the employee was assaulted at his assigned place of work by a stranger with no apparent motive; In Kelly v. Sohio Chemical Co., supra, where the employee was struck down from behind in her office by an unknown assailant for no discoverable reason; in May v. Ozark Central Telephone Co., supra, where, for the sake of the discussion, it was assumed that the employee had been accidentally shot by a hunter while working in a wooded area; in Long v. Schultz Shoe Co., supra, where the employee was struck by a stray bullet in the course of a shooting scrape between other employees on the premises; and in Scherr

v. Siding & Roofing Sales Co., supra, where a salesman calling on a customer at the latter's place of business was hit by an object thrown wildly by another visitor on the premises.

In every Missouri case involving an assault of "neutral" origin compensation has been denied. The rationale in each, insofar as it is pertinent to the issue before us, has been that the risk of unprovoked assault is no more logically attributable to one man's employment than to another's unemployment, and that the mere fact that the employment provided a convenient opportunity for the assault to take place, as by bringing the victim and his assailant together at the point where it occurred, is insufficient to establish any causal connection between the employment and the injury, or to show that the latter was a rational consequence of the former.

That is the assault doctrine in Missouri. In its essential features and in the result to which it leads it conforms to the rule in the majority of jurisdictions, although not without exception or criticism. Annotations, 15 A.L.R. 588, 21 A.L.R. 758, 29 A.L.R. 437, 40 A.L.R. 1122, 72 A.L.R. 110, 112 A.L.R. 1258, 8 A.L.R. 395, 23 A.L.R. 403; 99 C.J.S. Workmen's Compensation § 227, p. 765 et seq.; Larson's Workmen's Compensation Law, Sec. 11.31, p. 184 et seq.; Schneider's Workmen's Compensation, Vol. 6, Chap. 22, p. 116 et seq.; 58 Am.Jur., Workmen's Compensation, Sec. 265, p. 765–6. The assault in the case before us was clearly of neutral origin. We would unhesitatingly affirm the Commission on that ground were it not that respondent, pointing to the fact that the incident occurred in a public street, insists that that circumstance compels a different result by bringing the case within the purview of the street hazard doctrine. No phase of the discussion is so difficult to take in hand or so frustrating to conduct as that which respondent's point now introduces.

The street hazard doctrine, unlike the assault doctrine, has been only narrowly developed in Missouri. It has furnished the basis for decision in a number of cases involving traffic accidents, but in none of them was it found necessary to frame so definitive a statement of the doctrine as to indicate either the basis or extent of its applicability to all other kinds of street accidents. Nor has it been possible in this situation to turn with confidence to the decisions of other jurisdictions for instruction. In not one of them, for instance, have we been able to find a firm definition of "street hazards," surely the first requisite of a doctrine designed to deal with that special category of risks. Without it, the scope of the doctrine will always be indefinite, its application uncertain and its result doubtful. It is often said that street hazards are perils "peculiar *or incidental* to the streets." 99 C.J.S. Workmen's Compensation § 248(a), p. 873. What is a risk *"incidental* to the streets? " "Incidental" is a wanton word; it accommodates the writer's interpretation on one occasion and solicits the reader's on another. It invites us to suppose that the place where the risk manifests itself is the determinative factor in its classification, since it suggests no other. It provides no test by which causal connection can be ascertained with confidence. It proposes no method by which rational consequence can be determined with certainty. Any definition that relegates those factors to the vagaries of interpretation leaves the doctrine "bereft of pillar and prop." And nowhere is the result of that infirmity more distressfully demonstrated than in those jurisdictions which allow an adaptation of the "positional risk theory" to serve as a street hazard doctrine.

Briefly, the positional risk theory makes an accident compensable if the victim's employment caused him to be at the place where it happened. Obediently to that principle, if an employee's duties require him to go into the street and he meets with an accident while there, the accident is held to be the result of his being there and hence attributable to his employment, since *"but for"* the employment he might have been

elsewhere, out of reach of the harm that befell him. As we have seen in assault cases, however, that circumstance is regarded in Missouri as affording only a convenient opportunity for the accident to occur. It is a coincidence, not a cause. What is postulated is, that an accident which happens to a person *while* he is in the street happens *because* he is in the street; and the equally untenable corollary is, that an accident which happens to a man while he is employed happens because of his employment. The ultimate vice of the theory is that it begins by concerning itself with, and ends by confining itself to, the question of whether the accident occurred "in the course of" the employment. In the first particular it violates the basic function of a special doctrine; in the second, it abrogates the basic requirement of Missouri law. Thus it lends itself effortlessly to the approval of any claim so long as the employee was "on the job" at the time the accident occurred, irrespective of the source or nature of the hazard that produced it. With wonderful restraint and equal illogic, it has not been applied in cases involving injuries inflicted by acts of God; possibly on the assumption that in those instances it would be indiscreet to doubt the omniscience of the victim's selection. At any rate, for those and no doubt other reasons, the positional risk theory is unacceptable in Missouri. Williams v. Great Atlantic & Pacific Tea Co., supra, 332 S.W.2d 299.

 Any definition of street hazards, if it is to avoid the reproach of the positional risk theory and encourage a result consistent with the principles to which our courts are committed, must do more than locate the risk in the street; it must connect it with the employment, rationally. It must distinguish between coincidence and cause. And it must be sufficiently free from the vicissitudes of interpretation to preclude the allowance of claims that are beyond the contemplation of our Act; for it was not the intent of the law to furnish blanket insurance against any and every mishap that might befall an employee, in the streets or elsewhere. Stout v. Sterling Aluminum Products Co., Mo.App., 213 S.W. 2d 244, 246; Morrow v. Orscheln Bros. Truck Lines, 235 Mo.App. 1166, 151 S.W. 2d 138, 144. Now, where it is asserted that the accident was an outgrowth of the employee's working environment, the factors of causal connection and rational consequence are said to exist if the causative risk was "inherent in the particular conditions * * * under which the employment is carried on." Long v. Schultz Shoe Co., supra, 257 S.W.2d 213; Graves v. Central Electric Power Co-op, Mo., 306 S.W.2d 500, 504. We regard the word "inherent" as the key word in that quotation. Inherency of the risk in the working environment is the link by which the accident is causally connected with the employment and made attributable to it; it is the test by which the one is established as a *rational* consequence of the other. The requirement is not suspended, nor is the test of its satisfaction relaxed, by the fact that the street becomes the employee's place of work. If he is injured by conditions existing there, he must show that the causative risk was inherent in those conditions; otherwise, his accident will be held not to have arisen "out of" his employment, but to have resulted either from some independent cause or from one unexplained. A street hazard, then, should be defined as one *inherent in the use of the streets;* meaning, in turn, one naturally, normally or logically encountered there by the public generally in the ordinary course of human affairs—"* * * in the light of human understanding and experience," as the Long case puts it. Moreover, we think inherency is the only factor with which the doctrine should concern itself. Two results of that conclusion may be noticed:

1st: Tested by inherency, the doctrine will apply not only to accidents caused by the uses to which streets are put, but also to those resulting from their construction or maintenance, including those produced by structures that overhang, underlie or stand in such close proximity to the streets

as to pose a latent but nonetheless positive and continuing threat to traffic over them. Limited by inherency, the doctrine will be sufficiently definite in scope to exclude unauthorized claims, yet sufficiently flexible to permit its accommodation to related situations that seem sometimes to invite it; as, for instance, to an injury sustained on adjacent premises as the end result of an accident that began in the street from a risk inherent in its use, the proximity of the premises and the continuity of the event being links by which the injury there is rationally connnected with the hazard that produced it.

2nd: With inherency as its dominant factor, the doctrine eliminates, or confines to their proper spheres, the sometimes confusing considerations of "neutral risks" and "increased risk." The classification of neutral risks may serve a useful purpose in assault cases; but streets do not generate blind and irrational forces as the human mind does when it is actuated by malice or mania. There is no reason, therefore, to be concerned with such a category in street accident cases when neither the streets themselves nor the uses they are designed to serve are capable of creating a risk that could appropriately be classified in it. Nor is "increased risk" a proper consideration in street accident cases. Street hazards, by any definition, are bound to be shared in some degree by all members of the traveling public. There is a rule that runs to the effect that where a risk is common to the public generally, it is incumbent on the claimant to prove that his employment increased his exposure to it beyond the common average, and thereby enhanced the likelihood of his being injured by it. May v. Ozark Central Telephone Co., supra; Schmidt v. Adams & Sons Grocer Co., Mo. App., 377 S.W.2d 564. That rule should only be invoked, however, where the accident is produced by a risk *not inherent* in the working environment. If the street becomes the employee's place of work by virtue of his errand in it, and he is injured by a hazard inherent in the conditions existing there, compensation should be allowed. The fact that other persons may have been exposed to the same risk at the same time is irrelevant.

So much for the street hazard doctrine. Does it apply in this case? We say, No. The claim is based on an assault; the assault doctrine governs it. The fact that it occurred in the street is only a beguiling coincidence, not the cause. The risk of common assault is sometimes encountered in the streets, to be sure, but that does not make it a street hazard. Situs is not the test; inherency is.

Respondent cites two Missouri cases as refuting that conclusion. Let them be examined.

In Beem v. H. D. Lee Mercantile Co., 337 Mo. 114, 85 S.W.2d 441, 100 A.L.R. 1044, a traveling salesman, authorized to collect and actually carrying his employer's money, was killed in the course of a highway robbery. The court said, 85 S.W.2d 1. c. 446, " * * * 'Highway robbery' is robbery committed on persons using or traveling a public highway, and its name indicates that it is a danger incident to, connected with, and 'arising out of' the use of the highways. * * *" Compensation was allowed. We agree that it should have been. "Highway robbery" can *only* occur on a public thoroughfare; *nowhere* else. The risk of it, however latent and rarely manifested, is naturally—indeed exclusively—attributable to the use of the highway; hence, inherent. Common assaults do not meet that test. Were the case to be decided by the same court today, however, in the light of progress since made in the classification of special risks, it is to be doubted that the court would dismiss from consideration, as it did in the penultimate paragraph of the opinion, the fact that the employee carried his employer's funds, as that aspect of his employment made him a peculiarly attractive target for robbers, off the highway as well as on, and in the more modern view would have brought his case within the first class of

risks in the assault category, by which the same result would have been reached.

In Buckner v. Quick Seal, Inc., 233 Mo. App. 273, 118 S.W.2d 100, an employee who was required to travel by train was, in the course of one of his trips, assaulted by a drunken thug whose only disclosed motive was to demonstrate the effectiveness of a "rabbit punch"; clearly an unprovoked assault. The beguiling coincidence was that it occurred while the employee was on a business trip. Compensation was allowed. We cannot agree with that decision and must decline to follow it. Its rationale is revealed by two statements from the opinion.

(a) " * * * It is difficult to understand how he was in the course of his employment * * * at the time the accident occurred and such accident not have arisen out of his employment," 118 S.W.2d 1. c. 110–111. The author's quandary on that score explains the result he reached. It is unlikely to arise again. It is now settled that our Act imposes *two* requirements for compensability —the accident must not only arise "in the course of," but also "out of," the employment. " * * * These are separate tests and each must be satisfied, * * *" Williams v. Great Atlantic & Pacific Tea Co., supra, 332 S.W.2d 1. c. 298; and " * * * proof of one does not establish the other, * * *" Hacker v. City of Potosi, 340 S.W.2d 166, 1. c. 169. The facts met the first test; the author simply inferred compliance with the second from that circumstance.

(b) " * * * It is true that the dangers to which the employee was subjected must have resulted from the place to make it a train risk; but it is enough if the employee was in the place by reason of his employment and in discharge of his duties to his employer," 118 S.W.2d 1. c. 111. That is a forthright, but surely unconscious, endorsement of the positional risk theory. The inadvertent resort to it seems to have been suggested by Katz v. Kadans & Co., 232 N.Y. 420, 134 N.E. 330, 23 A.L.R. 401, from which the Beem and Buckner cases both quote extensively and on which the latter, at least, relies with misplaced confidence.

In the Katz case a deliveryman was stabbed by a maniac who happened to be at large in the streets. Compensation was allowed on the positional risk theory which New York espouses. Larson's Workmen's Compensation Law, Sec. 10, p. 85 et seq., and cas. cit. The opinion seems to recognize that there is a difference between cause and coincidence, but the illusion of logic is dispelled in the next breath by treating the terms as synonymus "if the workman *is in the place* by reason of his employment." That is the positional risk theory in its practical application. In the light of its repudiation in Missouri it cannot be allowed to influence our decision in the case before us.

The ruling of the learned circuit judge is accordingly reversed, and the award of the Commission affirmed.

WOLFE, Acting P. J., and ANDERSON, J., concur.