**Eva LATHROP, Plaintiff-Respondent,**

v.

**TOBIN–HAMILTON SHOE MANUFACTURING COMPANY and Employers Mutual Casualty Company, Defendants-Appellants.**

**No. 8502.**

Springfield Court of Appeals.

Missouri.

April 1, 1966.

Daniel, Clampett, Ellis, Rittershouse & Dalton, Paul D. Rittershouse, Springfield, for defendants-appellants.

Quentin Haden, Ava, Neale, Newman, Bradshaw, Freeman & Neale, Warren S. Stafford, Springfield, for plaintiff-respondent.

STONE, Presiding Judge.

In this proceeding under the Missouri Workmen's Compensation Law [V.A.M.S. Chapter 287], claimant Eva Lathrop filed a claim for benefits on account of personal injuries sustained as the result of an accident about 10 A.M. on Friday, September 14, 1962, in Mansfield, Missouri, when a driverless, runaway automobile crashed through a window of the shoe factory of her employer, Tobin-Hamilton Shoe Manufacturing Company, where she then was engaged in her regular work, i. e., operating "a closer" which "sews the back of shoes

and the toes." The employer and its insurer, Employers Mutual Casualty Company, admitted that the accident arose "in the course of" claimant's employment but asserted that it did not arise "out of" her employment and, therefore, was not compensable. V.A.M.S. § 287.120. The referee so found and denied compensation; and, on review, the Industrial Commission handed down a final award, all members concurring, denying compensation for the same reason. Upon appeal, the Circuit Court of Greene County (to which the case was transferred on change of venue) found "as a matter of law, that the accidental injury in question *did* arise out of [claimant's] employment" and that she was entitled to benefits under the Compensation Law, set aside the final award of the Industrial Commission, and remanded the cause to the Commission for further proceedings. This appeal by employer and insurer has followed.

We digest the pertinent facts from the testimony of claimant, the only witness, and from the written report of the investigating trooper of the Missouri State Highway Patrol, received in evidence by agreement of counsel. The employer's factory was situate on the north side of an east-and-west alley, fifteen feet in width, which ran parallel to, and one short block north of, the business route of U. S. Highway 60 through the City of Mansfield, judicially known to have had a population of 949 persons according to the United States census of 1960. Varble v. Whitecotton, 354 Mo. 570, 575, 190 S.W.2d 244, 246(4); Missouri Public Service Co. v. Barton County Elec. Coop., Mo.App., 353 S.W.2d 818, 819(1). The south side of the factory was (as the trooper measured it) "six paces" or about eighteen feet north of the north edge of the east-and-west alley. A north-and-south alley, sixteen feet in width, ran north from the business route of Highway 60 to the east-and-west alley, dead-ending at, and making a T-intersection with, the latter alley at a point about even with the middle of the south side of the factory. With respect to the east-and-west alley, claimant testified that "there's a street [an alley] there but there's no traffic"; but, with respect to the north-and-south alley, she said "yeah, it's busy." The east-and-west alley was one-way, limited to eastbound traffic, as was shown by an appropriate sign on the north side of the T-intersection. There was a gentle downgrade for northbound vehicles on the north-and-south alley.

At the time of accident, claimant was seated, facing toward the east, near the north end of a long north-and-south table and about ten feet north of a large window in the south wall of the factory. A substantial portion of this window would have been within the lines of the north-and-south alley, if extended to the north. The window was seventeen feet in width and five feet four and one-half inches in height. The glass, "painted white," admitted light but permitted no vision through it. The bottom of the window was five and one-half inches above ground level, while the floor of the factory was four feet two inches below ground level. There were no barricades between the east-and-west alley and the factory.

The automobile, which was shortly to work the havoc, stopped in the driveway of a filling station on the northeast corner of the intersection of Highway 60 and the north-and-south alley. When brought to a halt there, the automobile was headed north and was wholly on private property, to wit, in the filling station driveway, between the east line of the north-and-south alley and the gasoline pumps. The here unidentified female driver of the automobile alighted therefrom and (in the language of the patrol report) "had her sister . . . move on the left side of car out of the sun. Apparently the motor of the car was left running and as the passenger moved to the left side of the car she accidentally put the car in gear and hit the accelerator. The car went forward approximately 140′ and crashed through a window of the Tobin-Hamilton [factory]." As shown on the

patrol report, the driverless, runaway automobile traveled almost due north on private property just east of the north-and-south alley until the automobile reached the east-and-west alley, crossed the latter alley angling slightly west of north, traversed the eighteen feet between the alley and the factory, mounted the 5½″ section of the south factory wall under the window nearest to claimant, crashed through that window, and finally "came to rest 43′ north of where it entered the factory." Struck without warning, claimant knew nothing of the occurrence itself and her first recollection was of fellow-employees "pulling me out from under" the table. Since the nature, extent and duration of her injuries are not here in issue, it will suffice to capsule them in her terse statement that "I had a cracked pelvis and [right] hip and this leg" with "cuts on my head and [left] eye."

In its final award denying compensation, the Industrial Commission included the oft-quoted statement that "[i]t is necessary to bear in mind the fundamental difference between those causative agencies which are part and parcel of the master's business and under his control, and those which lie outside that business and beyond his control. In the former class of cases, it is quite reasonable to hold the master liable, no matter how unusual or unpreventable the accident may be. But, in the latter class of cases it seems unjust to hold the employer liable, unless the employment in some way exposes the employee to an unusual risk [of] injury from such agency which is not shared by the general public." [1] And the Commission suggested "that the facts in the instant case are not unanalagous to those in Scherr v. Siding & Roofing Sales Co., [Mo.App.], 305 S.W.2d 62." In reversing the Commission, the "order and decree" of the circuit court did not indicate

the theory on which the court had reached the conclusion that, *as a matter of law,* the injury did arise out of claimant's employment. In excellent briefs filed in this court, resourceful counsel join issue as to whether the judgment of the circuit court may be supported on any of three bases, namely, (1) on the *"street-risk doctrine,"* (2) on the principles controlling in the so-called *"assault cases," or* (3) on the theory that the accident resulted from a *"special hazard"* peculiar to claimant's employment.

▉ Preliminary to discussion of the above theories, it may be well to note that our Missouri courts have not accepted the so-called "positional-risk theory" [Williams v. Great Atlantic & Pacific Tea Co., Mo. App., 332 S.W.2d 296, 299; Liebman v. Colonial Baking Co., Mo.App., 391 S.W.2d 948, 952–953], under which an accident becomes compensable on a mere showing that "it would not have happened but for the fact that the conditions or obligations of the employment put claimant in the position where he was injured" [Williams, supra, 332 S.W.2d at 299] or, even more pointedly put, that "the victim's employment caused him to be at the place where it happened." Liebman, supra, 391 S.W.2d at 952. And, recognizing the disfavored status of the positional-risk theory in this jurisdiction, instant claimant expressly disavows reliance on that theory.

We deal first with the *"street-risk doctrine"* because the other two points are interrelated in theory. Larson's statement in boldface type under the heading of "the street-risk doctrine" is: "All courts now agree that *street or highway injuries* to employees such as traveling men, deliverymen, and solicitors, whose duties increase their exposure to the hazards of the street, arise out of the employment, although the nature of the risk (as distinguished from

---

1. Ries v. De Bord Plumbing Co., Mo.App., 186 S.W.2d 488, 489; Finley v. St. Louis Smelting & Refining Co., 361 Mo. 142, 147–148, 233 S.W.2d 725, 728; Culberson v. Daniel Hamm Drayage Co., Mo., 286 S.W.2d 813, 816; Carriker v. Lindsey, Mo.App., 313 S.W.2d 43, 46; Gregory v. Lewis Sales Co., Mo.App., 348 S.W.2d 743, 746–747. See Scherr v. Siding & Roofing Sales Co., Mo.App., 305 S.W.2d 62, 64–65.

the degree) is not peculiar to the employment. A large number of courts have gone one step further by holding that injury from such risks is compensable regardless of whether such exposure is continuous or only occasional, so long as the exposure is in fact occasioned by the employment. At the same time, the concept of street risks has been broadened far beyond the original idea of traffic perils, and has been applied to almost any *mishap whose locale is the street,* including simple falls, stray bullets, falling trees, and foul balls." 1 Larson, Workmen's Compensation Law, § 9.00, p. 75. (Except as is otherwise specifically noted, all emphasis herein is ours.)

In Gregory v. Lewis Sales Co., Mo.App., 348 S.W.2d 743, 747 (ruled upon the principles controlling in assault cases), we quoted parenthetically, but with approval, the basic definition of the street-risk doctrine in the first sentence of the above paragraph from Larson, supra. And in Ries v. De Bord Plumbing Co., Mo.App., 186 S.W.2d 488, 490 (an assault case), the court digested the doctrine of street-risk or street-hazard cases as being "that *injuries received on the public streets or highways,* due to traffic accidents, falls, and other accidents, which are more likely to occur on the highway than off of it, arise out of the employment." Thus, the street-risk doctrine deals with "street or highway injuries" caused by mishaps "whose locale is the street." Larson, supra.

In an effort to bring instant claimant's injury within the scope of this doctrine, her counsel seize upon the statement in Liebman, supra, 391 S.W.2d at 954, that the doctrine should be "sufficiently flexible" to include "an injury sustained on adjacent premises as the end result of *an accident that began in the street from a risk inherent in its use* . . . ."—an expression by way of dictum following the author's definition of "[a] street hazard . . . as one *inherent in the use of the streets* [emphasis not ours]; meaning, in turn, one naturally, normally or logically encountered there by the public generally in the ordinary

course of human affairs . . . ." 391 S. W.2d at 953. However, the situation at hand does not call for our approval or disapproval of the quoted dictum from Liebman, supra, since the case at bar would not be within the scope of that dictum anyway, in that obviously claimant was *not* injured "as the end result of an accident that began in the street from a risk inherent in its use."

Claimant also cites five other Missouri cases to her point that she is entitled to compensation under the street-risk doctrine. The first of these is Murphy v. Wells-Lamont-Smith Corp., Mo.App., 155 S.W.2d 284, in which claimant Murphy, on her way to work, was walking on the sidewalk in front of her employer's factory and shipping yard and had reached a point where the employer had changed the sidewalk and was using it as a driveway into the shipping yard, when she heard a shout, saw a truck backing from the street into the shipping yard, stepped two feet off the sidewalk into the yard, and there was struck by the truck. Counsel for instant claimant mistakenly cite Murphy, supra, as holding "that an employee was entitled to recover *under the street-hazard doctrine* when she was hit by a truck on private property," when, in fact, that case was decided on, and simply reflected the application of, what is known as *the going and coming rule* [155 S.W.2d at 289(3)], i. e., that an accident is said to arise "in the course of" employment when it occurs as the employee is "going to and from work . . . *on the employer's premises*" (emphasis not ours) [1 Larson, Workmen's Compensation Law, § 15.11, p. 195], that rule itself constituting an exception to the broad "'general rule that harm sustained by an employee while going to or from his work is not compensable.'" Tucker v. Daniel Hamm Drayage Co., Mo.App., 171 S.W.2d 781, 784(2). That Murphy, supra, was decided on the going and coming rule was confirmed in an opinion by the same author in Tucker, supra, 171 S.W.2d at 784–785. See also the context in which the same court dis-

cussed Murphy in Donzelot v. Park Drug Co., Mo.App., 239 S.W.2d 526, 532(3), and cited it in Garrison v. U. S. Cartridge Co., Mo.App., 197 S.W.2d 675, 676(1).

■ Three of the cases cited by claimant [Beem v. H. D. Lee Mercantile Co., 337 Mo. 114, 85 S.W.2d 441, 100 A.L.R. 1044; Morrow v. Orscheln Bros. Truck Lines, 235 Mo.App. 1166, 151 S.W.2d 138; Howes v. Stark Bros. Nurseries & Orchards Co., 223 Mo.App. 793, 22 S.W.2d 839] involved "street or highway injuries" [Larson, supra] sustained by employees while on public ways in the course of employment. In Buckner v. Quick Seal, Inc., 233 Mo.App. 273, 118 S.W.2d 100,[2] an employee required to travel by train (a public conveyance) was, while riding thereon, injured by an unprovoked assault. When the opinion in each of the cases cited by claimant is read and considered, as it must be, in the light of the facts of that particular case,[3] none of those cases fairly can be said to support her insistence that she is entitled to compensation under the street-risk doctrine. The situation under review is not within that doctrine as it has been either defined or applied in any Missouri decision. The New York cases, to which claimant calls our attention [Domres v. Syracuse Safe Co., 240 N.Y. 611, 148 N.E. 727; Santos v. Guemes, 270 App.Div. 1057, 63 N.Y.S.2d 61], are not persuasive here, for the decisions in that state in effect embrace the positional-risk theory, i. e., compensation on a mere showing that the victim's employment put him in the position where he was injured [see 1 Larson, Workmen's Compensation Law, §§ 10.00 to 10.21, incl., and New York cases there cited; Liebman, supra, 391 S.W.2d at 955], whereas Missouri rejects that doctrine and instant claimant

specifically disclaims reliance thereupon. Certainly the judgment of the circuit court cannot be affirmed on the basis that claimant was entitled, as a matter of law, to recover on the street-risk doctrine.

■ Turning to the *"assault cases,"* we discussed at some length in Gregory v. Lewis Sales Co., Mo.App., 348 S.W.2d 743 (application to transfer denied Mo.Sup. No. 49116), the controlling principles in that broad category of actions. Instant claimant's counsel incorporate in their brief this excerpt from Gregory, supra, 348 S. W.2d at 745: "Perhaps the most frequently repeated definitive statement concerning 'out of' the employment is that an injury so arises when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. See Heaton v. Ferrell, Mo.App., 325 S.W.2d 800, 803–804, and the numerous cases collected in footnote 1. Several of the cases include the alternative statement that, '(i)n other words, an injury arises out of the employment *if it is a natural and reasonable incident thereof,* even though not foreseen or anticipated' [citing six Missouri cases] . . . ." However, counsel pass up the kernel of the matter under discussion by omitting the remainder of the paragraph: " . . . but all of these [cases] and many others add the qualifying admonition that, to arise out of the employment, an injury must have been *a rational consequence of some hazard connected therewith.* Heaton v. Ferrell, supra, 325 S.W.2d loc. cit. 804(4), and cases cited in footnote 3; King v. City of Clinton, Mo.App., 343 S.W.2d 185, 188(5); Jackson v. Euclid-Pine Inv. Co., supra [223 Mo.App. 805], 22 S.W.2d [849], loc. cit. 851." [4] It is not sufficient that the em-

---

2. For a critique of this case, see Liebman v. Colonial Baking Co., Mo.App., 391 S. W.2d 948, 955.

3. Hogue v. Wurdack, Mo.App., 298 S.W.2d 492, 498(10); Tucker v. Daniel Hamm Drayage Co., Mo.App., 171 S.W.2d 781, 785. See State on Inf. of Dalton v. Miles

Laboratories, 365 Mo. 350, 364, 282 S.W. 2d 564, 573(12), and cases there cited.

4. See Kelley v. Sohio Chemical Co., Mo. (banc), 392 S.W.2d 255, 257, 258; Toole v. Bechtel Corp., Mo., 291 S.W.2d 874, 880; Liebman, supra note 2, 391 S.W. 2d at 950(2); Kammeyer v. Board of

ployment simply may have furnished a *convenient opportunity or occasion* for the employee's injury from some unconnected source.[5] And where, as here, the causative agency was not "part and parcel of the master's business and under his control" but was "outside that business and beyond his control," the reported cases in this jurisdiction frequently have reminded, as did the final award of the Industrial Commission in this case, that "it seems unjust to hold the employer liable, *unless the employment in some way exposes the employee to an unusual risk [of] injury from such agency which is not shared by the general public.*" See again the cases cited in footnote 1, supra.

The essence of instant claimant's contention is that her employment did expose her to an unusual risk of injury not shared by the general public and that her injury was a rational consequence of a hazard connected with such employment, in that (so she argues) she was required to work "in close proximity to" (more accurately stated, ten feet from) a large "tinted" and "unguarded" glass window, with the bottom of the window being "approximately level with" (more carefully described, five and one-half inches above) ground level and the window itself being "immediately adjacent to" (in fact, about eighteen feet north of) the T-intersection of the alleys.

It is true that, as claimant emphasizes, "the general public" did not work *inside* the employer's shoe factory and, on that account, was not subject to the specific possibility of being struck by a driverless, run-

away automobile after it had crashed through a window in the factory wall. But claimant was injured only when and because the automobile struck her, not by reason of any antecedent happenstance along its unguided and unpredictable course, such as that of the automobile having crashed through a window. And it cannot be gainsaid that members of the general public *outside* the factory, including those on foot and in vehicles who might have been using the nearby alleys, also were exposed to the hazard of being struck and thereby injured by this or some other driverless, runaway automobile. If it be conceded (for the purposes of this opinion) that *some* reasonable men might conclude that claimant's employment, which stationed her inside the factory at a point approximately twenty-eight feet from the nearest public way, exposed her to an unusual risk of injury from the agency here involved, i. e., from a driverless, runaway automobile, which was not shared by the general public, and that her injury was a rational consequence of a hazard connected with her employment, we are convinced that *other* equally-reasonable men honestly could and undoubtedly would reach a contrary conclusion.[6]

■ If from the evidence as a whole different inferences or conclusions might have been drawn as to these basic issues of fact, it was for the Industrial Commission, as the trier of the facts, to draw the inferences and determine the issues and such determination did not become a matter of law;[7] and this was so even though

Education, Mo.App., 393 S.W.2d 122, 127; Scherr, supra note 1, 305 S.W.2d at 65 (6); Long v. Schultz Shoe Co., Mo.App., 257 S.W.2d 211, 212.

5. Kelley, supra note 4, 392 S.W.2d at 257 (4); Toole, supra note 4, 291 S.W.2d at 882; Foster v. Aines Farm Dairy Co., Mo., 263 S.W.2d 421, 428(12); Gregory, supra note 1, 348 S.W.2d at 746; 58 Am. Jur., Workmen's Compensation, § 265, loc. cit. 266.

6. Compare Kelley, supra note 4, 392 S.W. 2d at 258; Liebman, supra note 2, 391 S.W.2d at 950–952; Scherr, supra note 1, 305 S.W.2d at 65–66; May v. Ozark Central Telephone Co., Mo.App., 272 S.W. 2d 845, 849; Long, supra note 4, 257 S.W.2d at 212–213; Ries, supra note 1, 186 S.W.2d at 489–490.

7. Karch v. Empire Dist. Elec. Co., 358 Mo. 1062, 1071, 218 S.W.2d 765, 771; Sanderson v. Producers Commission

there was no evidence other than claimant's testimony and the investigating trooper's written report. Ashwell v. United States Seed Co., Mo.App., 167 S.W.2d 950, 952–953(2, 3). See Karch v. Empire District Elec. Co., 358 Mo. 1062, 1071, 218 S.W.2d 765, 771; Arnold v. Wigdor Furniture Co., Mo., 281 S.W.2d 789, 797(9). On the record before us, we have no doubt but that it was for the Commission to determine whether or not claimant's employment exposed her to an unusual risk of injury from a driverless, runaway automobile not shared by the general public and whether or not her injury was a rational consequence of a hazard connected with such employment.[8]

The finding of the Industrial Commission that the accident sustained by claimant did not arise out of her employment was the finding of an ultimate fact[9] and implied a finding of every supporting issue of fact in accordance with that general finding.[10] Thus, the Commission (so we hold) reasonably could have found, and presumably did find, "as elements of" the ultimate finding that claimant's accident did not arise out of her employment [Kelley, supra, 392 S.W.2d at 258], that such employment did not expose her to an unusual risk of injury not shared by the general public and that her injury was not a rational consequence of a hazard connected with such employment. It is immaterial what the findings and conclusion of the circuit court in the first instance, or of this court on appeal, might have been if sitting as the trier of the facts.[11] For, on judicial review the inquiry is whether, upon the entire record, the Commission reasonably could have made the findings and award under consideration, *not* whether a contrary conclusion would have been permissible.[12]

What we have written in the foregoing discussion of the controlling principles in *assault cases* is equally relevant to, and similarly dispositive of, claimant's alternative theory that the accident resulted from a *"special hazard"* peculiar to her employment.

Concluding (as we have) that, upon the entire record, the Commission reasonably could have found that the accident sustained by claimant did not arise "out of" her employment, it necessarily follows that the judgment of the circuit court cannot stand. Accordingly, it is the judgment of this court that the judgment of the circuit court be

Ass'n., 360 Mo. 571, 579, 229 S.W.2d 563, 567–568(7); Arnold v. Wigdor Furniture Co., Mo., 281 S.W.2d 789, 797(9); Damore v. Encyclopedia Americana, Mo., 290 S.W.2d 105, 108(6); Shrock v. Wolfe Auto Sales, Inc., Mo., 358 S.W.2d 812, 815(4); Cotton v. Voss Truck Lines, Inc., Mo.App., 392 S.W.2d 428, 434(7).

8. See particularly Williams v. Great Atlantic & Pacific Tea Co., Mo.App., 332 S.W.2d 296, 299–300; Howard v. Ford Motor Co., Mo.App., 363 S.W.2d 61, 67. Consult again the cases cited in note 6, supra.

9. Leilich v. Chevrolet Motor Co., 328 Mo. 112, 120, 40 S.W.2d 601, 604(3); Damore, supra note 7, 290 S.W.2d at 108 (5); Schulte v. Grand Union Tea & Coffee Co., Mo.App., 43 S.W.2d 832, 833(2); Probst v. St. Louis Basket & Box Co., Mo.App., 52 S.W.2d 501(1), certiorari quashed, State ex rel. Probst v. Haid, 333 Mo. 390, 62 S.W.2d 869.

10. State ex rel. Probst v. Haid, 333 Mo. 390, 62 S.W.2d 869, 872(2); Staten v. Long-Turner Const. Co., Mo.App., 185 S.W.2d 375, 381(16). See State ex rel. Buttiger v. Haid, 330 Mo. 1030, 1034, 51 S.W.2d 1008, 1009(4); Hanley v. Carlo Motor Service Co., Mo.App., 130 S.W.2d 187, 192(11).

11. Cotton, supra note 7, 392 S.W.2d at 434; Davis v. Brezner, Mo.App., 380 S.W.2d 523, 529; Slider v. Brown Shoe Co., Mo.App., 308 S.W.2d 306, 310(6); Blair v. Armour & Co., Mo.App., 306 S.W.2d 84, 89.

12. Williams, supra note 8, 332 S.W.2d at 299–300; Johnson v. Simpson Oil Co., Mo.App., 394 S.W.2d 91, 97(12); Vandaveer v. Reinhart & Donovan Const. Co., Mo.App., 370 S.W.2d 156, 163; Barton v. Western Fireproofing Co., Mo.App., 326 S.W.2d 344, 349(5), and cases there collected in note 3.

set aside and for naught held and that the final award of the Industrial Commission denying benefits under the Compensation Law be reinstated and affirmed.

RUARK and HOGAN, JJ., concur.